**64**

Joseph MORRASH and Morton Ford,
Plaintiffs–Appellees,

and

Charles Cox, Plaintiff,

v.

Charles STROBEL,
Defendant–Appellant.

and

John R. Stedman, City of Alexandria; Defendant.

Joseph MORRASH, Charles Cox and
Morton Ford, Plaintiffs–Appellants,

v.

Charles STROBEL and City of Alexandria, Defendants–Appellees.

and

John R. Stedman, Defendant.

Joseph MORRASH, Charles Cox and
Morton Ford, Plaintiffs–Appellees,

v.

CITY OF ALEXANDRIA,
Defendant–Appellant.

and

Charles Strobel, John R. Stedman, Defendants.

Joseph MORRASH and Morton Ford,
Plaintiffs–Appellants,

and

Charles Cox, Plaintiff,

v.

Charles STROBEL, City of Alexandria,
Defendants–Appellees.

and

John R. Stedman, Defendant.

Joseph MORRASH and Morton Ford,
Charles Cox, Plaintiffs–Appellants,

v.

Charles STROBEL, Defendant–Appellee.

and

John R. Stedman, City of Alexandria, Defendants.

Nos. 85–1918(L), 85–1939, 85–1998,
85–2002 and 86–3552.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 13, 1986.

Decided Oct. 6, 1987.

Robert A.W. Boraks, Washington, D.C. (Mary E. Craig, Reston, Va., on brief), for defendant-appellant.

Susan M. Cardenas, Joseph F. Cunningham (David G. Fiske, Thomas & Fiske, P.C.; David D. Hudgins, William H. Atwill, Jr., Cunningham & Hudgins, Alexandria, Va., on brief), for plaintiffs-appellees.

Before PHILLIPS and SPROUSE, Circuit Judges, and BOYLE, District Judge for the Eastern District of North Carolina, sitting by designation.

TERRENCE WILLIAM BOYLE, District Judge:

In this civil rights case, three Alexandria, Virginia, policemen sued the City and its Public Safety Director claiming that their constitutional rights were deprived by the defendants. All of the plaintiffs claim that they were "whistle blowers" who pursued and exposed police misconduct. The plaintiffs claim that in return for their efforts to expose corruption they were singled out by the defendants for retaliation resulting in either discipline or discharge. The plaintiffs seek to recover money damages from the defendants, together with injunctive relief reinstating the dismissed plaintiff and expunging the records of the disciplined plaintiffs, and a mandatory injunction against future violations of the plaintiffs' constitutional rights and the recovery of attorneys' fees under 42 U.S.C. § 1988.

## I.

The controversy arose from two separate incidents. The first involved the alleged moral turpitude of an Alexandria police

officer, and the second involved the alleged illegal drug activity of the city sheriff. In the summer of 1982, the plaintiff Morton Ford heard rumors that one of his fellow officers had made homosexual advances toward an adolescent male. Conversations with this officer increased Ford's suspicion. Ford sent a memo to the police department's internal affairs division expressing his concern over this subject. Shortly thereafter Ford had a disagreement with his superior, the defendant Charles Strobel, Director of Public Safety for the City of Alexandria. Strobel questioned Ford's motive in writing the memo setting out his suspicion of sexual misconduct by a fellow officer. Later, Ford was transferred from his assignment in vice/narcotics to a night shift patrol, without any loss of pay or of seniority.

Ford claims that Strobel transferred him as punishment in retaliation for the memo. The defendants claim that the transfer was unrelated to the memo. Rather, defendants say that Ford's transfer resulted from his poor management and poor leadership and his disclosure within the police force of the allegations against his fellow officer. Ford did not invoke his right to an administrative grievance procedure to redress the transfer although that right was available to him.

After Ford's memo with the charges, Strobel conducted an investigation of the alleged sexual impropriety and concluded that the suspicions raised in the memo were the product of rumor and that the accusations against the officer were unfounded.

The summary handling of the official investigation caused a group called the Alexandria Police Association ("the Association") to initiate its own "unofficial" inquiry. A memo was sent to the defendant Strobel from the Association questioning the adequacy of his investigation. This was followed in October 1983 by the appointment by the Association of an "investigative committee" consisting of the plaintiff Ford, together with the plaintiff Joseph Morrash (a fellow officer) and a third police

officer who is in no way involved in this lawsuit.

Morrash and Ford contend that they were authorized as members of a committee of the Police Association to determine whether Public Safety Director Strobel's investigation was adequate or a sham.

Approximately two weeks after the committee had been formed, Officer Morrash was cautioned by his superior, Lieutenant Hilleary, not to conduct his investigation while he was on duty. On November 28, 1983, Morrash was transferred from his job as a burglary investigator to foot patrol at a shopping center. On November 29, 1983, Morrash filed a grievance to this transfer. Morrash and Ford continued to participate in the investigation for several months. During January and February 1984, the Association questioned the usefulness of continuing the investigation as its members began to voice objection to the committee's activity.

On April 4, 1984, when the committee failed to produce substantial proof to corroborate Officer Ford's allegations of sexual misconduct, the Association entirely withdrew its support from the committee.

Morrash appealed the transfer through established grievance procedures and secured the reinstatement of his previous job assignment. An arbitration panel unanimously held that the transfer was punitive and that the reasons for the transfer were pretextual.

The second incident involved the following facts. The plaintiff-appellant Charles Cox, a police officer, was assigned to investigate suspected drug trafficking at an Alexandria restaurant. Cox and another officer conducted the investigation, which began in February 1984, under the command of Lt. Arthur Bratcher. Through a confidential informant, it was discovered that a regular patron of the restaurant was the Alexandria sheriff. The sheriff was at one point a "target" of the investigation. The evidence produced by this investigation was insignificant and circumstantial. Thereafter, Bratcher terminated the sheriff's status as a target of the inquiry and the investigation of the restaurant stopped

in mid–March 1984. Cox then wrote a memo to Bratcher stating that the investigation of the sheriff should continue, citing what he believed to be promising new leads. The investigation was not reopened. On August 24, 1984, Cox resigned from the police force after allegations (which he denied) that he had been improperly using sick leave time for his recreation. Cox, Ford and Morrash filed this action.

The district judge allowed summary judgment for the City on all of the claims of all of the plaintiffs. The court also allowed summary judgment for the defendant Strobel on the claims of Charles Cox. The jury tried and decided the claims of the plaintiffs Morrash and Ford against the defendant Strobel under 42 U.S.C. § 1983. These included claims for the alleged deprivation of the plaintiffs' constitutional rights to free association and due process.

The jury awarded Morrash $6,000 and Ford $9,000 on these claims. No punitive damages were awarded. Defendant Strobel did not make a motion to the trial court for judgment n.o.v. Thereafter, the district court ordered Ford reinstated to his prior position and ordered Morrash's and Ford's files to be expunged of any adverse content as a result of this entire incident. The district court also awarded plaintiffs' attorneys' fees after substantially reducing the allowable hours and hourly rate. All of the parties have appealed the adverse rulings of the court.

## II.

We affirm the summary judgment on all claims against the City of Alexandria and the summary judgment on the claims of Charles Cox against the defendant Strobel. We also affirm the trial court's denial of attorney's fees to the City. Because defendant Strobel neglected to move below for a judgment notwithstanding the verdict, this court may not reverse the trial court's denial of Strobel's motions for directed verdict against Morrash and Ford. Because, however, we find that the trial court erred in denying these motions, we remand the action for a new trial with respect to Morrash's and Ford's Due Process claims and Morrash's freedom of association claim.

A claim under 42 U.S.C. § 1983 will not support a recovery for mere negligence, *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), nor will it countenance a claim founded on *respondeat superior*. *Monell v. Department of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–2038, 56 L.Ed.2d 611 (1978). To the extent that the City negligently failed to supervise Strobel, the plaintiff-appellants have no right to recover. The City would be liable only to the degree that Strobel's actions could be said to represent official policy. 436 U.S. at 694, 98 S.Ct. at 2037–2038. Municipal liability under § 1983 exists only where a deliberate choice to follow a course of action is made by the official responsible for establishing final policy with respect to the subject matter at issue. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986).

The plaintiff-appellants base their claims against the City on the argument that Strobel's actions were deliberate choices by an official responsible for establishing final policy. The question for us is whether the plaintiff-appellants raised an issue of triable fact whether Strobel was responsible for establishing final policy. The City argues there has been no pattern of abuse and that, in the absence of such a pattern, a municipality cannot be held liable. The existence of a pattern, however, is rendered immaterial by *Pembaur*, which held a municipality may be liable for even a single decision by a municipal policymaker. 475 U.S. at 479–480, 106 S.Ct. at 1298.

Nevertheless, the argument fails. We find no indication that Strobel was acting as a policymaker under § 1983 analysis. The plaintiff-appellants must show that this discipline from Strobel was final City policy, and they have not done so. To begin with, the City's Administrative Regulations themselves declare that the City Council and City Manager, *not* the Director of Public Safety, retain the exclusive right

to decide the most appropriate means of utilizing city personnel (App. at 1178).

Of course, these regulations in and of themselves are not dispositive. We hasten to add that the City of Alexandria could not have avoided attribution of policy to itself merely by retaining some formal, unexercised authority either to countermand Strobel's actions or discipline or discharge him. As this court has recently held, the key issue in identifying a policymaker is a question not of who possesses final control over policy in form or theory, but rather of who wields that authority in fact. *Spell v. McDaniel*, 824 F.2d 1380, 1386 (4th Cir. 1987). Unlike the situation in *Spell*, however, the authority of other officials in the City of Alexandria to countermand Strobel's personnel decisions was more than titular. When Morrash and Ford were transferred, the City of Alexandria provided established grievance procedures which lay open to both officers. Indeed, Morrash availed himself of these procedures to appeal his transfer and obtained reinstatement in his old job. The fact that Morrash obtained relief through the City's own administrative procedures thoroughly negates the argument that Strobel was the final arbiter of the City's personnel policies, either in theory or in fact. It is plain that officials like Strobel who may well be policymakers in some realms are not policymakers in personnel matters, particularly in regard to particular first-line, reviewable personnel decisions. Strobel was not setting policy for the City of Alexandria when he approved the transfers. Therefore, the City was not liable under § 1983, and summary judgment with respect to it was appropriate.

The City of Alexandria, having prevailed below, appeals the denial of its request for attorneys' fees. We affirm the trial court's refusal to grant this request. It is improper for an appeals court to disturb a trial court's determination unless the trial court was clearly mistaken. *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir., 1978). We find that the trial court did not abuse its discretion in denying the fees requests of the City of Alexandria.

■ The district court correctly granted summary judgment against plaintiff Cox. This plaintiff, during the pendency of the case, judicially admitted the following through Rule 36, F.R.Civ.P.

1. That on August 7, 1984, you [Cox] did admit that you had lied to your supervisor in connection with the Internal Affairs Investigation # 84–51 concerning your improper and unauthorized [sic] in violation of General Order 82–3 (Pers–4) IX, 9.5 by the using of sick-leave for non sick-leave purposes.

2. That as a result of your [Cox] admissions in connection with the above-referenced Internal Affairs Investigation you did submit your written resignation from the Alexandria Police Department on August 11, 1984.

Thus, it is a conclusive fact between these parties that plaintiff Cox lied in response to an internal investigation and that his resignation followed as a consequence of his deception. There is no issue as to the cause of Mr. Cox's resignation, and the defendants were properly granted summary judgment on the claims filed by Mr. Cox.

Defendant Strobel appeals the denial of his motion for directed verdict with regard to the claims of Officers Morrash and Ford. Specifically, he claims that the trial court erred in ruling that the officers had a constitutionally protected due process right to given job assignments and that the trial court erred in finding that Officer Morrash had a cause of action under the freedom of association clause of the First Amendment. We address these two contentions in turn.

■ The requirements of procedural due process concededly apply to deprivations of interests encompassed by the Fourteenth Amendment's protection of liberty and property. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). No constitutionally protected liberty interest was called into question by the transfers of Officers Morrash and Ford. Liberty interests in an employment context pertain not to the right to continue in a given job but rather to the freedom to seek another. Thus, the transfers of these two officers

would abridge a liberty interest if the defendant had imposed on the officers a disability or stigma of a kind which would impair their future employment prospects. *Roth*, 408 U.S. at 573–574, 92 S.Ct. at 2707. There is no suggestion that defendant Strobel did anything to impair the plaintiffs' ability to avail themselves of other employment opportunities. Therefore, we hold that the plaintiffs' liberty interests under the Due Process Clause have not been offended. Accord, *Altman v. Hurst*, 734 F.2d 1240 (7th Cir.) *cert. denied*, 469 U.S. 982, 105 S.Ct. 385, 83 L.Ed.2d 320 (1984).

■ There remains the question whether defendant Strobel denied the plaintiffs their rights to property without due process. Property rights are not created by the Constitution. *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709. If the plaintiffs have a constitutionally protected property right, that right must have its genesis in some independent source, for instance, state law or a city ordinance. In this case, the source to which the plaintiffs point is the Law Enforcement Officers' Procedural Guarantees. Code of Virginia, § 2.1–116.1, *et seq.* These code sections provide, among other things, that a police officer threatened by punitive transfer is entitled to certain procedural protections, including notice, right to reply and a hearing before an arbitration panel of three.

The plaintiffs' claims that they were denied their rights to property without due process also fail.

The property right created by the statute is extremely limited. It does not give Virginia police officers the right to a given job assignment under all circumstances, nor does it create a right against punitive transfer. Rather, it provides that an officer who has been punitively transferred shall have recourse to certain enumerated procedural guarantees. The "punishments" involved in the cases of Officers Morrash and Ford were not severe; their new job assignments entailed no loss of pay or seniority. Regardless of whether the punishment of Officers Ford and Morrash was warranted in light of their own rump investigation without official authori-

zation or approval, the two officers were accorded a broad range of procedural protections as mandated by the statute. Indeed, Officer Morrash appealed his transfer through a comprehensive grievance procedure in which he ultimately prevailed. There was no process created by the statute which Officer Morrash did not receive; therefore, no Fourteenth Amendment claim is cognizable. Although Officer Ford did not grieve his transfer, his failure to do so was his choice. There is no indication that, had Officer Ford elected to invoke his statutorily created rights, they would have been denied him. Although they allege violation of the Due Process Clause, the plaintiffs fail to identify any denial of a procedural right that they enjoyed. We hold that the Due Process Clause of the Fourteenth Amendment has not been offended in this case.

■ Defendant Strobel also appeals the trial court's denial of a directed verdict with respect to Officer Morrash's claim of freedom of association under the First Amendment. The evidence is inadequate to sustain a claim based on freedom of association. Officer Morrash's transfer did not prevent him from continuing to associate with other officers of his choosing. This court does not for a moment question the right of Officer Morrash to associate with other police officers for the purpose of advancing commonly held beliefs and ideas. Indeed, we recognize that state action which may tend to curtail the freedom to associate is subject to the closest scrutiny. *N.A.A.C.P. v. Alabama*, 357 U.S. 449, 460–461, 78 S.Ct. 1163, 1170–1171, 2 L.Ed.2d 1488 (1958). However, the facts before us raise no issue respecting appellant Morrash's associational rights. Officer Morrash did not come into disfavor because of his membership in the Alexandria Police Association. The associational aspect of this investigation was minimal at best, as is shown by the fact that Morrash's endeavors apparently continued well after the Association had withdrawn its support. Morrash's right to associate with organizations and other officers of his choosing is not at issue in this case; there is no evidence that

defendant Strobel tried to prevent Morrash either from associating with other officers who shared Morrash's critical views or from maintaining membership in the Association. Morrash was instead transferred because he engaged in an independent investigation of an internal matter which had already been conclusively decided by his superiors. We do not think that, merely because Officer Morrash undertook this activity in concert with others, his First Amendment rights to associate are implicated.

We note parenthetically that Officer Morrash makes no claim respecting his First Amendment right to freedom of speech. His complaint raises only one First Amendment issue: the freedom of association claim which we have already addressed. Whether or not Morrash's activities were protected by the First Amendment right to freedom of speech presents a far closer question than his association claim. However, the issue of free speech was not presented at the trial level nor was it briefed before this court. The question of whether Morrash's speech-related activities were chilled must not concern this court, which is obliged only to consider those issues properly before it. Officer Morrash's first amendment rights to association were not abridged, and his rights to free speech were not pled. We therefore find that the trial court erred in its denial of a directed verdict to defendant Strobel on Officer Morrash's First Amendment claim.

In the normal situation, this court would reverse the ruling of the trial court with respect to Morrash's and Ford's Due Process claims and Morrash's freedom of association claim. In this case, however, we lack the opportunity to do so because of a crucial omission by defendant Strobel. After the return of the jury's verdict against him, Strobel failed to make a timely motion for judgment n.o.v. The effect of this failure is to prevent the appeals court from entering a judgment contrary to the one entered by the trial court pursuant to the verdict. *Cone v. West Virginia Pulp & Paper Co.*, 330 U.S. 212, 67 S.Ct. 752, 91 L.Ed. 849 (1947); *Johnson v. New York,*

*New Haven & Hartford Railroad Co.*, 344 U.S. 48, 73 S.Ct. 125, 97 L.Ed. 77 (1952).

Where a motion for j.n.o.v. has not been presented to the trial court, this court will not direct the district court to enter judgment contrary to the one it had permitted to stand. 330 U.S. at 218, 67 S.Ct. at 756. We are therefore constrained to remand the cause to the district court for a new trial on the Due Process claims of Morrash and Ford and on Morrash's First Amendment claim to freedom of association.

The grant of summary judgment in favor of the City of Alexandria is AFFIRMED. The grant of summary judgment against Charles Cox is AFFIRMED. The judgment against the defendant Strobel on the Due Process claims of plaintiffs Morrash and Ford and Morrash's claim to freedom of association are VACATED and REMANDED for a new trial.

AFFIRMED IN PART; VACATED IN PART AND REMANDED FOR NEW TRIAL.