3 F.3d 1156
 Edward CUSHING, Plaintiff-Appellant,
v.
CITY OF CHICAGO and Alderman Edward J. Burke, Chairman of
the City of Chicago Finance Committee, Walter Knorr, City
Comptroller, and John Tully, Director of Personnel of the
Chicago Fire Department, as agents of the City of Chicago,
Defendants-Appellees.
 No. 92-2286.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 14, 1993.
Decided Sept. 3, 1993.
As Amended Sept. 20, 1993.
 
 J. Peter Dowd, Dowd & Bloch, Chicago, IL (argued), for plaintiff-appellant.
 Patricia M. Carroll-Smit, Office of Corporation Counsel, Jean Dobrer (argued), Kelly R. Welsh, Asst. Corp. Counsels, Benna R. Solomon, Office of Corp. Counsel, Appeals Div., Daniel J. Pierce, Lydon & Griffin, Chicago, IL, for defendants-appellees.
 Before COFFEY and KANNE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.
 KANNE, Circuit Judge.
 
 
 1
 Edward Cushing brought this suit under 42 U.S.C. Sec. 1983, alleging the defendants had deprived him of property without due process of law in violation of the Fourteenth Amendment. The district court granted the defendants' motions to dismiss Cushing's second amended complaint pursuant to Fed.R.Civ.P. 12(b)(6). We affirm in part and reverse in part.
 
 I.
 
 2
 Our summary of the facts is drawn from the plaintiff's second amended complaint. In January 1988, Edward Cushing, a Chicago Fire Department Battalion Chief, experienced chest pains and shortness of breath while on duty. He was treated at St. Joseph's Hospital and subsequently placed on medical lay-up status for one year. During that time, the City of Chicago paid Cushing his full salary in accordance with Sec. 7.3 of the collective bargaining agreement between the City (the "Employer") and the Chicago Fire Fighters Union, Local No. 2.[1] Article VII, Sec. 7.3 of the agreement, covering "Sick and Injury Leave," states, in relevant part:
 
 
 3
 Any member of the Fire Department receiving any injury on duty or duty related disability so as to prevent him from attending to his duties as such member of the Fire Department shall, for the duration of twelve (12) months, providing his disability shall last that time, or for such portion of twelve months as such disability or sickness shall continue, receive his usual salary; and such disability shall not be considered as rendering necessary his retirement from service in the Fire Department during such period. The fact of such disability, its nature or cause of his injury, and its duration shall be certified to by the Department physician or by the production of such other evidence as shall be satisfactory to the Fire Commissioner....
 
 
 4
 In the event a dispute arises as to the disability of the member, or the nature or cause of his injury, such dispute shall be referred to the Grievance Procedure under Article X.
 
 
 5
 ....
 
 
 6
 The Employer further agrees to pay all hospital and medical costs of an employee incurring a duty connected injury, illness or disability.
 
 
 7
 On January 6, 1989, when the lay-up period expired, Cushing was removed from the Fire Department's payroll. He then applied to the Board of Trustees of the Fireman's Annuity and Benefit Fund of Chicago (the Retirement Board) for duty disability benefits. The Retirement Board found Cushing had suffered a duty related "injury" and had been removed from the Fire Department's payroll for medical reasons. Accordingly, in February, Cushing's request for benefits was granted.
 
 
 8
 On May 30, 1989, the Fire Department's Director of Personnel, John Tully, sent notices to the doctors and hospitals that had treated Cushing, informing them Cushing's injury was not duty related and, as a result, he was responsible for his medical bills.[2] Any future bills for treatment of his ailment, the notices stated, should be sent to Cushing's home address.
 
 
 9
 On January 5, 1990, Cushing's attorney wrote to the Chairman of the City of Chicago Finance Committee, Alderman Edward Burke, claiming that Cushing was entitled to full payment of his medical expenses under state law as well as the City's municipal code. The letter stated that the City had failed to pay these expenses even though the Retirement Board had awarded Cushing duty disability benefits, and asked Burke to resolve the matter promptly. Cushing received no reply from the Finance Committee.
 
 
 10
 In February, however, Cushing's attorney received a response from a claims investigator in the City Comptroller's Office. The investigator wrote that, according to a January 22, 1990 memo from the City's Medical Director to Personnel Director Tully, Cushing told hospital personnel in 1988 that he had previously suffered two heart attacks, and had been taking medication for congestive heart failure for approximately five years but had stopped without instruction from his physician. On the basis of this information, the investigator's letter concluded Cushing suffered from a pre-existing medical condition, not a duty related injury, and was therefore solely responsible for any medical charges he had incurred.
 
 
 11
 In March 1990, Cushing filed a Sec. 1983 claim against the City of Chicago and its agents, Personnel Director Tully, Alderman Burke, and City Comptroller Walter Knorr, alleging deprivations of procedural and substantive due process under the Fourteenth Amendment as a result of the City's refusal to pay 100% of his medical expenses. In July, Cushing filed an amended complaint reasserting the same substantive claims. Defendant Burke filed a motion to dismiss the amended complaint; the other defendants filed a partial motion to dismiss and a motion for partial summary judgment. On April 22, the district court granted the motions to dismiss in part and denied them in part. The procedural due process count was dismissed without prejudice, with leave to file an amended complaint reasserting that claim under Article 7, Sec. 7.3 of the collective bargaining agreement.
 
 
 12
 In May 1991, Cushing filed a second amended complaint resurrecting only the procedural due process claim. The complaint alleged that, under Sec. 7.3 of the agreement, Cushing had a property interest in the City's payment of his medical expenses, and that the City had discontinued and withheld payment without giving him notice and an opportunity to be heard.[3]
 
 
 13
 The defendants once again filed motions to dismiss for failure to state a claim. On April 22, 1992, the district court granted the motions, dismissing the complaint with prejudice. In its order, the court acknowledged the existence of a dispute over the nature of Cushing's disability, but found that Sec. 7.3 of the collective bargaining agreement required any such dispute be referred to the grievance procedure established in Article X. Because Cushing had alleged neither that he had availed himself of the grievance process nor that the process was itself insufficient, the court ruled he had failed to state a claim upon which relief could be granted. Cushing filed a timely notice of appeal; the jurisdiction of this court is predicated on 28 U.S.C. Sec. 1291.
 
 II.
 
 14
 We review de novo a Rule 12(b)(6) dismissal, assuming the truth of all well-pleaded allegations and drawing all reasonable inferences in the plaintiff's favor. Midwest Grinding Co., Inc. v. Spitz, 976 F.2d 1016, 1019 (7th Cir.1992); Bethlehem Steel Corp. v. Bush, 918 F.2d 1323, 1326 (7th Cir.1990). A complaint should not be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). See also Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).
 
 
 15
 On appeal, Cushing contests only the dismissal of his second amended complaint, thus we limit our review to the issues raised by that pleading. There are two: (1) did Cushing adequately allege a property interest in full payment of his medical bills under Sec. 7.3 of the collective bargaining agreement? (2) did Cushing's failure to refer his dispute with the City to the grievance procedure set forth in the agreement preclude his procedural due process claim? The pleading in this case by both parties is, to be charitable, haphazard. Nonetheless, we conclude that Cushing's claim survives the defendants' motions to dismiss.
 
 
 16
 In order to assert a due process claim, Cushing must allege sufficient facts showing that he had a legitimate claim of entitlement to medical benefits under the collective bargaining agreement. See Lee v. County of Cook, 862 F.2d 139, 141 (7th Cir.1988); Davis v. City of Chicago, 841 F.2d 186, 188 (7th Cir.1988). Property interests under the Fourteenth Amendment "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law--rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). "A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." Perry v. Sindermann, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972). See also Wallace v. Robinson, 940 F.2d 243, 246-47 (7th Cir.1991) (en banc), cert. denied, --- U.S. ----, 112 S.Ct. 1563, 118 L.Ed.2d 210 (1992).
 
 
 17
 A written contract can be the source of a property interest. See Perry, 408 U.S. at 601, 92 S.Ct. at 2699. Even so, "[e]xplicit contractual provisions may be supplemented by other agreements implied from 'the promisor's words and conduct in the light of the surrounding circumstances.' " Id. at 602, 92 S.Ct. at 2700 (quoting 3A Corbin on Contracts Sec. 562 (1960)). See also Colm v. Vance, 567 F.2d 1125, 1128 (D.C.Cir.1977) ("Perry is especially pertinent to appellants' property claims in that it demonstrates that the source of a protected property right might be implicit in the overall workings of a particular government employer."). We understand Cushing to aver that, for a period of approximately eighteen months, the City paid his medical expenses, and that those payments gave rise to a legitimate claim of entitlement to continued full payment of his bills under the collective bargaining agreement.
 
 
 18
 In his second amended complaint, Cushing's sole contention is that the City never gave him notice of its "intent to discontinue full payment" of medical expenses related to his illness. His brief to this court elaborates on this allegation, stating that the City "provided Chief Cushing with ... twelve months of salary and paid all of his medical expenses during that period," and "paid all of ... Cushing's medical expenses in connection with his duty illness or injury until it discontinued to do so without prior notice on May 30, 1989." However, the allegations in the second amended complaint do not clearly support these assertions, and Cushing's reply brief says only that a factual dispute exists concerning whether or not he had received full reimbursement of his medical expenses from January 1988 to May 1989.
 
 
 19
 Unfortunately, the City is no more certain on this issue than Cushing. In none of the papers filed in the district court did the City deny it had paid any portion of Cushing's medical expenses. The brief of defendants City of Chicago, John Tully, and Walter Knorr states merely, "[i]f the City paid the expenses in full for some time it did so mistakenly, and discontinued the payments when it determined that Cushing's illness was not duty related," adding, "the record ... shows that [Cushing] cannot prove the City ever provided the 100% reimbursement he seeks."[4]
 
 
 20
 Because this case is before us on a motion to dismiss, we are careful not to read too much into the equivocations of Cushing's counsel.
 
 
 21
 [W]e have made clear on more than one occasion that a plaintiff is "free on ... appeal to give us an unsubstantiated version of the events," provided it is consistent with the complaint, to show that the complaint should not have been dismissed. Orthmann v. Apple River Campground, Inc., 757 F.2d 909, 915 (7th Cir.1985); accord Early v. Bankers Life & Cas. Co., 959 F.2d 75, 79 (7th Cir.1992). This rule is necessary to give plaintiffs the benefit of the broad standard for surviving a Rule 12(b)(6) motion as articulated in Hishon, 467 U.S. at 73, 104 S.Ct. at 2232, and Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).
 
 
 22
 Dawson v. General Motors Corp., 977 F.2d 369, 372 (7th Cir.1992).
 
 
 23
 Under Sec. 7.3 of the collective bargaining agreement, the City is required to pay all hospital and medical costs of an employee incurring a "duty connected" illness. It is true, as the defendants contend, that any interest in medical benefits under Sec. 7.3 is contingent upon a finding the illness is duty related; the illness must be "certified to by the [Fire] Department Physician or by the production of such other evidence as shall be satisfactory to the Fire Commissioner."[5] Cushing claims, however, that despite the absence of such a finding,[6] the City paid his medical expenses related to his heart ailment from the time he was injured in January 1988 until May 1989, when Personnel Director Tully wrote Cushing's medical creditors.[7] Past payments could, we believe, give rise to a reasonable expectation that such payments would continue. Cf. Patkus v. Sangamon-Cass Consortium, 769 F.2d 1251, 1263-65 (7th Cir.1985) (employee had property interest in employment because county government's agreement to implement a dismissal-only-for-cause policy, even though the policy had not been formally adopted, provided basis for legitimate expectation of continued employment).
 
 
 24
 Thus, taking as true Cushing's allegation that he was not "provided with prior notice of the City's intent to discontinue full payment of medical expenses related to his illness," we conclude he has adequately pleaded that the City paid his medical expenses from January 1988 to May 1989, when he first learned that the City did not consider his illness duty related. Such payments are the source of Cushing's legitimate claim of entitlement to 100% payment of his medical bills under the collective bargaining agreement. Cushing has stated a due process claim upon which relief can be granted.
 
 
 25
 It may turn out, as the defendants contend, that Cushing had nothing more than "a unilateral expectation" of medical benefits under the agreement, Roth, 408 U.S. at 577, 92 S.Ct. at 2709, or that his claim to benefits was "subject to so many conditions as to make [his] interest meager, transitory, or uncertain," Reed v. Village of Shorewood, 704 F.2d 943, 948 (7th Cir.1983). The underdeveloped record in this case does not compel either conclusion, however. Cushing's proof of payments by the City, and whether or not any payments were made in error, are matters best taken up in a summary judgment motion or at trial.
 
 III.
 
 26
 The defendants argue that Cushing's Sec. 1983 claim should be dismissed for yet another reason. Assuming, arguendo, Cushing had a property interest in medical benefits under Sec. 7.3 of the collective bargaining agreement, the defendants contend that he has nonetheless failed to state a due process claim because, as the district court found, he did not avail himself of the grievance procedure established by the agreement. Section 7.3 provides that "[i]n the event a dispute arises as to the disability of the member, or the nature or cause of his injury, such dispute shall be referred to the Grievance Procedure under Article X."
 
 
 27
 We have recognized that grievance procedures created by collective bargaining agreements can satisfy the requirement of due process of law. Parrett v. City of Connersville, Ind., 737 F.2d 690, 696 (7th Cir.1984), cert. dismissed, 469 U.S. 1145, 105 S.Ct. 828, 83 L.Ed.2d 820 (1985). The defendants maintain that the existence of a grievance procedure in this case precludes any claim Cushing was denied due process, particularly when he has not alleged the procedure itself was deficient. See Morrash v. Strobel, 842 F.2d 64, 69 (4th Cir.1987) (police officer was not deprived of property interest without due process where failure to grieve shift transfer was his own choice); Costello v. Town of Fairfield, 811 F.2d 782, 784 (2d Cir.1987) (retired police officers claiming entitlement to increased retirement benefits under collective bargaining agreement were not denied due process where they did not avail themselves of grievance procedure established under agreement); Marshall v. City of Cape Coral, Fla., 797 F.2d 1555, 1560 (11th Cir.1986) (city employee who had been fired was not deprived of due process when he failed to choose regulatory process whereby his termination could be reviewed by city manager).
 
 
 28
 This contention ignores, however, the allegation in the second amended complaint that "[a]t the time ... Tully decided to deny full payment of Cushing's duty-related medical expenses, it was the policy of the City and the Chicago Fire Fighters Union that disabled employees who were removed from the active payroll were not covered by the grievance procedure of the collective bargaining agreement." Cushing refers us to portions of the agreement that, he believes, support this allegation. Article II states, in part:
 
 
 29
 The Employer hereby recognizes the Union as the sole and exclusive bargaining agent for the following employees, for the purpose of collective bargaining and establishing and administering a labor contract covering wages, rates of pay, hours of labor and all other terms and conditions of employment:
 
 
 30
 All full time uniformed members of the Chicago Fire Department below the ranks of Deputy District Chief and Assistant Chief Paramedic ... (emphasis added).
 
 
 31
 Article XIII, Sec. 13.3, addressing the union's duty of fair representation, covers "all employees in the bargaining unit." Together, Article II and Sec. 13.3 of Article XIII create a question of whether or not Cushing was a member of the bargaining unit in May 1989, when he first learned the City did not consider his illness to be duty related. At that time, he had been off the Fire Department's payroll for almost six months, and thus was not a "full time uniformed member" of the Department.
 
 
 32
 The cases cited by the defendant are of no help in resolving the issue, because in each there was no dispute that the grievance procedure was available to, if not employed by, the complaining party. See Parrett, 737 F.2d at 695; Winston v. United States Postal Service, 585 F.2d 198, 200-01, 209-10 (7th Cir.1978); Armstrong v. Meyers, 964 F.2d 948, 949 (9th Cir.1992); Morrash, 842 F.2d at 69; Costello, 811 F.2d at 784-85; Marshall, 797 F.2d at 1557-58; Jackson v. Temple University, 721 F.2d 931, 932 (3d Cir.1983); Ash v. Board of Education of Woodhaven School District, 699 F.2d 822, 825, 827-28 (6th Cir.1983).
 
 
 33
 We believe the present case is also distinguishable from Roman v. United States Postal Service, 821 F.2d 382 (7th Cir.1987). There, Roman was threatened with discharge from his job as a postal worker for falsifying his employment application form. His supervisor promised him that, if he resigned, he would be rehired at another postal facility. Id. at 384. Roman resigned, but later decided that he had been falsely accused and sued the Postal Service, alleging that it had violated his due process rights in fraudulently inducing him to resign from his job. Id. His suit was essentially one for breach of the collective bargaining agreement covering postal employees, and therefore was subject to the agreement's terms as well as the provisions of the Labor Management Relations Act, 29 U.S.C. Sec. 141 et seq. Id. at 384-86.
 
 
 34
 Section 185(a) of the Act expressly required Roman to attempt to exhaust the grievance and arbitration procedures established by the collective bargaining agreement. He failed to initiate a grievance, however, and we determined that he was not excused from exhausting his contractual remedies because "the agreement gave [him] fair notice that his claim was subject to it...." Id. at 390. Accordingly, we ruled that Roman had failed to state a viable claim against the Postal Service. Id.
 
 
 35
 We do not believe Roman controls the outcome of the case before us. First, it is not entirely clear that Cushing's dispute with the City "concerns events which occurred while he was an employee and a member of the collective bargaining unit to whom the Union owed a duty of fair representation." Id. at 387. Moreover, in Roman, we found that the plaintiff, even after resigning from his job, "did not completely and finally sever his employment relationship with the Postal Service; [rather,] he anticipated being rehired," undermining the argument that Roman was not required to attempt to exhaust his contractual remedies. Id. In the present case, on the other hand, there is no dispute that, since January 1988, Cushing has been unable to return to active duty; indeed, it appears that his employment relationship with the Fire Department was permanently severed when he was removed from medical lay-up status in January 1989.
 
 
 36
 In sum, Cushing's contention that he was not eligible to use the grievance procedure under the collective bargaining agreement in May 1989 is more compelling than the arguments advanced by Roman. On these facts, we are unable to conclude that the collective bargaining agreement gave Cushing fair notice that his claim against the City was subject to it.[8]
 
 
 37
 The defendants suggest that, because Article VII, Sec. 7.3 covers "[a]ny member of the Fire Department," Cushing would have been able to grieve his dispute under the collective bargaining agreement. We are not convinced this language inexorably leads to the conclusion that, as one removed from active duty and receiving benefits from the Retirement Board, Cushing was nonetheless a "member" of the Department eligible to use the grievance process.[9] Rather, we find that the collective bargaining agreement is ambiguous on the question of whether its grievance procedure was available to Cushing at the time his dispute with the City arose. Such a determination necessarily involves issues of fact, inappropriate for resolution in a motion to dismiss the complaint under Fed.R.Civ.P. 12(b)(6). See Lumpkin v. Envirodyne Industries, Inc., 933 F.2d 449, 454, 456-57 (7th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 373, 116 L.Ed.2d 324 (1991). See also Mitchell v. Archibald & Kendall, Inc., 573 F.2d 429, 432 (7th Cir.1978) ("Where the pleadings raise a contested issue of material fact, a Rule 12(b)(6) motion must be denied.").[10]
 
 IV.
 
 38
 The defendants also argue that Cushing cannot claim he was deprived of due process because "even if this dispute were not grievable, that would merely have left [him] free to assert his contractual rights under section 7.3 in a state court case." There are two ways to interpret the quoted language. First, as an argument that Cushing did not exhaust state remedies. This argument is without merit; Cushing was not required to exhaust state judicial remedies before filing a Sec. 1983 claim in federal court. Patsy v. Florida Board of Regents, 457 U.S. 496, 516, 102 S.Ct. 2557, 2568, 73 L.Ed.2d 172 (1982). See also Leaf v. Supreme Court of State of Wisconsin, 979 F.2d 589, 598 (7th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 2417, 124 L.Ed.2d 639 (1993); Scudder v. Town of Greendale, Ind., 704 F.2d 999, 1001-02 (1983).
 
 
 39
 The second argument is somewhat more complicated. As the defendants note, the existence of a state remedy can play a role in determining whether an individual has stated a claim for a deprivation of due process. Because "[d]ue process is flexible and calls for such procedural protections as the particular situation demands," Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972); see also Mathews v. Eldridge, 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976), the Supreme Court has held that, in some circumstances, "a statutory provision for a postdeprivation hearing, or a common law tort remedy for erroneous deprivation [of a liberty or property interest], satisfies due process." Zinermon v. Burch, 494 U.S. 113, 128, 110 S.Ct. 975, 984, 108 L.Ed.2d 100 (1990) (citations omitted). In such cases, a claim for Sec. 1983 liability necessarily fails.
 
 
 40
 Relying on Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) (overruled in part, not relevant here, by Daniels v. Williams, 474 U.S. 327, 330-31, 106 S.Ct. 662, 664, 88 L.Ed.2d 662 (1986)), and Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), the defendants contend any deprivation suffered by Cushing was the result of isolated, random, and unauthorized conduct by City officials. In Parratt, the Court held that a negligent deprivation of a constitutionally protected property interest caused by a state employee's random, unauthorized conduct does not give rise to a Sec. 1983 procedural due process claim unless the state fails to provide an adequate postdeprivation remedy. 451 U.S. at 541-44, 101 S.Ct. at 1916-17. The Court reasoned that in a situation where the state cannot predict and guard in advance against a deprivation, a postdeprivation tort remedy is all the process the state can be expected to provide, and is constitutionally sufficient. Id.[11] In Hudson, the Court extended the Parratt rule to intentional deprivations of property. 468 U.S. at 533, 104 S.Ct. at 3204.
 
 
 41
 The defendants argue that the rule of Parratt should apply to this case. They claim that, if indeed Cushing had a property interest in medical benefits, the City had no practical way to anticipate the deprivation of that interest and to provide Cushing with predeprivation notice and a hearing. Consequently, the existence of a postdeprivation remedy (presumably in the form of a tort claim against the City officials in state court) supplies Cushing with adequate process and thus precludes Sec. 1983 liability.[12]
 
 
 42
 The Supreme Court recently revisited the Parratt rule in Zinermon, 494 U.S. at 128-32, 110 S.Ct. at 985-87, a case the parties pass over in their briefs, but which we believe controls the outcome here. Although Zinermon involved an alleged deprivation of liberty under the Due Process Clause of the Fourteenth Amendment, the Court rejected "a categorical distinction between a deprivation of liberty and one of property" for purposes of due process analysis. Id. at 132, 110 S.Ct. at 986. According to the Court,
 
 
 43
 [t]he reasoning of Parratt and Hudson emphasizes the State's inability to provide predeprivation process because of the random and unpredictable nature of the deprivation.... In situations where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation tort remedy to compensate for the taking. Conversely, in situations where a predeprivation hearing is unduly burdensome in proportion to the liberty [or property] interest at stake, or where the State is truly unable to anticipate and prevent a random deprivation of a liberty [or property] interest, postdeprivation remedies might satisfy due process.
 
 
 44
 Id. at 132, 110 S.Ct. at 987 (citations omitted).
 
 
 45
 We discussed Zinermon at length in Easter House v. Felder, 910 F.2d 1387 (7th Cir.1990) (en banc), cert. denied, 498 U.S. 1067, 111 S.Ct. 783, 112 L.Ed.2d 846 (1991). While we acknowledged that "Zinermon narrowed the scope of Parratt 's application in certain factual circumstances," id. at 1400, we nonetheless concluded that, "[i]n its most fundamental form, ... Zinermon holds only that predictable deprivations of liberty or property which flow from authorized conduct are compensable under Sec. 1983." Id. at 1402. Upon review of the record, we believe the defendants' conduct in the present case falls into Zinermon 's narrow category.
 
 
 46
 The defendants' argument that the City could not have anticipated the deprivation of Cushing's property interest in medical benefits (assuming he had one), and thus could not have provided him with predeprivation process, is unconvincing. As the defendants concede, "[i]f the City paid the expenses in full for some time it did so mistakenly, and discontinued the payments when it determined that Cushing's illness was not duty related." This admission belies the claim that any termination of Cushing's medical benefits was the result of random conduct that would have made a predeprivation hearing impossible, or even unduly burdensome. Certainly the actions of Personnel Director Tully and City Comptroller Knorr (through a claims investigator in his office) do not constitute the type of unforeseeable and unpredictable conduct described in Parratt and its progeny.
 
 
 47
 Finally, the defendants cannot characterize their conduct in denying or withdrawing medical benefits as unauthorized. The City does not, and cannot, claim it lacks the power and authority to effect the very deprivation complained of in this case. Similarly, the City does not argue, and the record does not indicate, that either Tully or Knorr acted beyond the scope of his authority under the collective bargaining agreement. See Zinermon, 494 U.S. at 138, 110 S.Ct. at 990.
 
 
 48
 In short, the official conduct in this case differs significantly from that presented for our review in Easter House. There, an adoption agency sued three state employees under Sec. 1983, alleging it had been deprived of a property interest in an operating license without due process of law. 910 F.2d at 1390. The alleged deprivation resulted from a letter sent by one of the employees, informing the agency it would have to reapply for a license because it was not in compliance with state licensing standards. We determined the letter "was patently inconsistent with Illinois law and constituted an outright departure from the authority which the ... official was granted under the governing statutes and regulations." 910 F.2d at 1401. Moreover, the adoption agency could "point[ ] to nothing which would indicate that the state knew or should have known that the [defendants] or other state employees had disregarded, or were likely to disregard the state's established procedure for processing renewal applications." Id. Under the principles articulated in Parratt, we held the agency had failed to state a claim. Id. at 1408.
 
 
 49
 By contrast, the City does not disavow knowledge of Tully's and Knorr's actions, and does not suggest either individual contravened the provisions of the collective bargaining agreement, much less municipal or state law. The defendants' contentions that their actions were of a piece and were entirely proper thus take this case out of the ambit of Easter House. It follows that this case does not represent, in the words of Parratt, "the special instance ... where postdeprivation process is all that is due because no predeprivation safeguards would be of use in preventing the kind of deprivation alleged." Id. 494 U.S. at 139, 110 S.Ct. at 990. We conclude that the existence of a postdeprivation state remedy does not preclude Cushing's Sec. 1983 procedural due process claim.
 
 V.
 
 50
 Finally, because remand is inevitable, we briefly address an argument separately raised by defendant Edward Burke, Chairman of the City Finance Committee. Burke filed a motion to dismiss the second amended complaint pursuant to Fed.R.Civ.P. 12(b)(6), arguing, in part, that Cushing had failed to allege sufficient facts linking him to any asserted injury. Because it granted dismissal of the suit on other grounds, the district court did not reach this argument. Burke asks this court to consider his contention that Cushing's claim fails to comply with Fed.R.App.P. 28(a)(5), which requires that "[t]he argument [in the brief] shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on."[13]
 
 
 51
 We consider Cushing's allegations against Burke. Relying on his second amended complaint, Cushing asserts in his brief that the City Finance Committee has "ultimate" responsibility for approving duty related injury or illness expense claims;[14] that he wrote Burke because he did not believe he was eligible to file a grievance under the collective bargaining agreement; that the purpose of his letter was to inform the City Finance Committee of the actions taken by Personnel Director Tully and to request that the Committee process his claim for medical expenses; that Burke neither responded to his letter nor granted him a hearing on his claim against the City; and that Burke's actions contravened the City's policy of relying on duty injury/illness determinations made by the Retirement Board, a claim we have already rejected. See footnote 5, supra.
 
 
 52
 Missing from Cushing's complaint, his response to Burke's motion to dismiss, and his brief to this court is a reference to any authority, legal or otherwise, for the proposition that either the Finance Committee or Chairman Burke has responsibility for considering or paying Cushing's medical expenses under Sec. 7.3 of the collective bargaining agreement. As Burke points out, the agreement imposes no such obligations; the Finance Committee is not even mentioned in the sections of the agreement relevant to this appeal.
 
 
 53
 In a footnote in his reply brief, Cushing contends that certain sections of the Municipal Code of Chicago "clearly give[ ] the Finance Committee the final responsibility for adjudicating claims," citing Secs. 3-8-200, 3-8-210, and 3-8-230. A review of these sections reveals that they do not support Cushing's argument. Section 3-8-200 authorizes the Finance Committee to "provide for payment for proper medical care and hospital treatment for accidental injuries sustained by any ... fireman, while in the performance of his duties, and to that end may recommend to the city council the authorization for payment of any such necessary expenses." Cushing's claim is that he suffers from a duty related illness, not a duty related accidental injury. Likewise, Secs. 3-8-210 and 3-8-230 refer only to accidental injuries in the performance of duty.[15]
 
 
 54
 While we have held that "a litigant who fails to press a point [on appeal] by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point," Pelfresne v. Village of Williams Bay, 917 F.2d 1017, 1023 (7th Cir.1990) (citations omitted), cert. denied, --- U.S. ----, 113 S.Ct. 493, 121 L.Ed.2d 431 (1992); see also United States v. Berkowitz, 927 F.2d 1376, 1384 (7th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 141, 116 L.Ed.2d 108 (1991), it is clear the defects in Cushing's claim against Burke run to the second amended complaint itself. Thus, the problem is properly addressed by an argument made under Fed.R.Civ.P. 12(b)(6) rather that one under Fed.R.App.P. 28.
 
 
 55
 It is well settled that we may affirm the district court's decision to dismiss on any adequate ground contained in the record. American Federation of State, County and Municipal Employees v. Tristano, 898 F.2d 1302, 1305 (7th Cir.1990). Cushing's claim against Burke consists entirely of "conclusory allegations unsupported by factual assertions." Briscoe, 663 F.2d at 723. Such pleading fails even the liberal standard of Rule 12(b)(6).
 
 VI.
 
 56
 The decision of the district court dismissing Cushing's second amended complaint against the City of Chicago, Walter Knorr, and John Tully is REVERSED and the case REMANDED for proceedings consistent with this opinion. We express no opinion on the merits of Cushing's claim; we hold only that he has stated a claim upon which relief may be granted, making Rule 12(b)(6) dismissal improper as to these defendants. The decision of the district court dismissing Cushing's second amended complaint against Edward Burke is AFFIRMED.
 
 
 
 [1]
 The Chicago City Council ratified the collective bargaining agreement, thus incorporating it as part of the City's municipal code, in July 1988. The agreement covered the period from January 1, 1988 to December 31, 1991
 
 
 [2]
 Although the second amended complaint refers to "notices" sent by Tully, the record contains a copy of only one notice, dated May 30, 1989
 
 
 [3]
 Specifically, Cushing alleged that he "was not at any time provided with prior notice of the City's intent to discontinue full payment of medical expenses related to his illness and withholding of such payments."
 
 
 [4]
 It is obvious from these selected portions of the record and briefs that neither party can provide much information concerning the City's payment of Cushing's medical expenses. We fail to understand why the parties, who apparently have access to the relevant documents, neglected to supply this information to the district court and to this court
 
 
 [5]
 As noted, Cushing was awarded duty disability benefits by the Retirement Board of the Fireman's Annuity and Benefit Fund. In his second amended complaint, Cushing alleged that the City had a policy of relying on the Board's findings in making its own determination whether an illness was duty related. However, the pleadings contain no facts to support this bald assertion. Section 7.3 of the collective bargaining agreement, on the other hand, states unequivocally that either the fire department physician or commissioner must certify that an injury or illness is duty related
 The Retirement Board is not a party to the collective bargaining agreement and is not mentioned in the agreement; nothing in the agreement remotely suggests that the department physician or commissioner is bound by the decisions or policies of the Retirement Board. "[C]onclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." Briscoe v. LaHue, 663 F.2d 713, 723 (7th Cir.1981), aff'd, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). Insofar, then, as Cushing attempts to prove that he has a property interest in medical benefits under the collective bargaining agreement because the Retirement Board found that he suffered from a duty related illness and awarded disability benefits, he has failed to state a claim upon which relief can be granted.
 
 
 [6]
 It appears that a finding by the Fire Department's Medical Director did not occur until January 1990
 
 
 [7]
 The parties do not dispute that, at least from May 1989, the City has not paid any of Cushing's medical expenses relating to his illness
 
 
 [8]
 This case also bears little resemblance to a situation in which a union declines to take an employee's grievance to arbitration. See, e.g., Winston, 585 F.2d at 200-01, 209-10; Armstrong, 964 F.2d at 949-50; Jackson, 721 F.2d at 933. In that circumstance, by the time the question of whether or not to proceed to arbitration arises, the employee has already been through a grievance process
 
 
 [9]
 The defendants submit that a recent arbitration decision involving the City and the Chicago Fire Fighters Union indicates that Cushing's dispute with the City could have been grieved. City of Chicago v. Chicago Fire Fighters Union Local No. 2, AAA No. 51-390-0183-90 (1992) (Suntrup, Arb.). However, that decision, which involved a dispute over an alleged duty related illness under Sec. 7.3, was issued after the district court had dismissed Cushing's second amended complaint. In addition, it is apparent from the arbitrator's findings in that case that even though the complaining party filed his grievance while he was off duty because of illness, he later returned to active duty for another five and a half months before taking a second medical leave related to his ailment. See id. at 3-4. After becoming ill in January 1988, Cushing never returned to active duty. The factual difference between the two cases leads us to conclude that the arbitration decision tendered by the defendants does not support their assertion that Cushing's dispute could have been grieved
 
 
 [10]
 At oral argument, counsel for Alderman Burke indicated that, in 1989, when Cushing first learned the City did not consider his illness to be duty related, he would have been able to grieve his complaint without objection by the City. Nothing in the pleadings or the record supports this assertion, however, which was based, according to Burke's counsel, on a conversation he had with Corporation Counsel for the City during oral argument
 
 
 [11]
 Parratt was decided before the Supreme Court ruled, in Daniels, 474 U.S. at 336, 106 S.Ct. at 667, that a negligent act by a state official does not give rise to Sec. 1983 liability
 
 
 [12]
 For the reasons set forth in Part III, we are unable to say whether or not the grievance procedure in the collective bargaining agreement provided Cushing with adequate postdeprivation process
 
 
 [13]
 In his brief, Burke refers to Fed.R.App.P. 28(a)(4), which requires an appellant to present in its brief to the appellate court "a statement of the facts relevant to the issues presented for review, with appropriate references to the record." We think, however, based on the dates of the cases cited by Burke, that he intended to argue that Cushing failed to comply with Fed.R.App.P. 28(a)(5). An incorrect subsection cite is understandable under the circumstances. Rule 28 was amended effective December 1, 1991; former Rule 28(a)(4) is now Rule 28(a)(5). The cases contained in Burke's brief refer to former Rule 28(a)(4). The point, at any rate, is a technical one and in no way affects our disposition of Cushing's claim against Burke
 
 
 [14]
 We point out that the second amended complaint alleges, ambiguously, that the "the City Finance Committee has delegated the responsibility of approving payment of the medical expenses of a firefighter [sic] who sustains an illness or injury in the line of duty and whose expenses exceed any insurance benefits covering such illness or injury."
 
 
 [15]
 Also in his reply brief, Cushing refers us to the aforementioned arbitration decision involving the City and the Fire Fighters Union. This decision, Cushing claims, "shows that the Finance Committee does play a key role in the determination of duty injuries/duty illness."
 While the perfunctory nature of this argument is enough to doom it, we point out that, on the question of the Finance Committee's role in disputes over medical expense claims under Sec. 7.3, the arbitrator found that the collective bargaining agreement "nowhere states that the policies of the Finance Committee [concerning duty injuries] are mandatory guide[s] to contract administration"; furthermore, "the parties are not contractually obliged to follow policies of ... the Finance Committee". Chicago Fire Fighters Union, AAA No. 51-390-0183-90, at 24-25. Accordingly, we conclude that the arbitrator's decision is of no help in defining the Committee's role, if any, in disputes under Sec. 7.3, and thus does not support Cushing's claim against Burke.