7 F.3d 223
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Gary EASTLAKE, Plaintiff-Appellant,
v.
CITY OF CAYCE; Cayce Public Safety Department; Lavern
Jumper; A. G. Dantzler; Ellie Heustess, In Their
Official Capacities, Defendants-Appellees.
 No. 92-2470.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: July 22, 1993.
Decided: September 21, 1993.
 
 Appeal from the United States District Court for the District of South Carolina, at Columbia. Matthew J. Perry, Jr., District Judge. (CA-91-496-3)
 Wm. Gary White, III, John T. McMillan, Columbia, South Carolina, for Appellant.
 Susan P. McWilliams, Nexsen, Pruet, Jacobs & Pollard, Columbia, South Carolina, for Appellees.
 D.S.C.
 AFFIRMED.
 Before HALL and WILKINS, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 OPINION
 
 1
 Gary Eastlake appeals from the district court's order granting summary judgment for Defendants in his 42 U.S.C. § 1983 (1988) action challenging his discharge from the City of Cayce Public Safety Department. We find no merit in his claims; consequently, we affirm.
 
 
 2
 In 1984, Eastlake was a Public Safety Officer Trainee in Cayce, South Carolina. Between 1:00 a.m. and 2:00 a.m. on October 15, 1984, Eastlake and his immediate supervisor, Larry Phillips, entered a closed-down Popeye's Restaurant and took several tables and chairs for use in a bar operated by their wives. According to Eastlake, Phillips assured him that the restaurant's owners consented. Several weeks later, Eastlake brought the furniture back to the restaurant and left it outside. After learning that Phillips was under investigation for several burglaries and arsons, Eastlake reported the Popeye's incident to other law enforcement officials.
 
 
 3
 Eastlake and Phillips were indefinitely suspended; Phillips resigned. Eastlake claims that he was told that he had committed no wrongdoing and eventually could return to duty. On March 20, 1985, the City of Cayce issued Eastlake a final paycheck covering his last pay period and his accrued annual leave. Eastlake began a new job with the Lexington Police Department on April 1, 1985. In the spring or summer of 1985, Cayce Assistant Director of Public Safety Dantzler called him and asked him to turn in his Cayce badges and submit his resignation. Eastlake turned in his badges, but did not submit his resignation.
 
 
 4
 Nearly six years later, on February 22, 1991, Eastlake filed a 42 U.S.C. § 1983 action against the City of Cayce, the Cayce Public Safety Department, Lavern Jumper, A.G. Dantzler, and Ellie Heustess, claiming that he was discharged for "whistleblowing" in violation of his First Amendment and due process rights and that his discharge violated South Carolina law. Defendants filed a motion for summary judgment. Finding that Eastlake was discharged for taking the furniture from the Popeye's, and not for reporting Phillips, the district court granted summary judgment for Defendants.
 
 
 5
 On appeal, Eastlake contends that summary judgment was inappropriate because he never received notice of his discharge or the reason for his discharge and that the district court erroneously concluded that he was not discharged for reporting Phillips to the police department. Summary judgment is appropriate when there is no genuine issue of material fact that could lead a rational trier of fact to find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "In determining whether to grant summary judgment, all justifiable inferences must be drawn in favor of the non-movant." Miltier v. Beorn, 896 F.2d 848, 852 (4th Cir. 1990), (citing Anderson, 477 U.S. at 255). This Court reviews de novo a district court's decision to grant summary judgment. Higgins v. E.I. DuPont de Nemours & Co., 863 F.2d 1162, 1167 (4th Cir. 1988).
 
 
 6
 Eastlake claims that Defendants violated his First Amendment rights by discharging him in retaliation for "blowing the whistle" on Sergeant Phillips. To prevail on a First Amendment whistleblower claim, a plaintiff must prove three elements: "1) that the expressions which are alleged to have provoked the retaliatory action relate to matters of public concern; 2) that the alleged retaliatory action deprived [plaintiff] of some valuable benefit; and 3) that but for the protected expression the employer would not have taken the alleged retaliatory action." Goldsmith v. Mayor and City Council of Baltimore, 987 F.2d 1064, 1071 (4th Cir. 1993). At the outset, the court must determine the reason the employee was discharged, because unless his exercise of free speech was the"but for" cause for dismissal, the action must be dismissed. Jurgensen v. Fairfax County, Virginia, 745 F.2d 868, 881 (4th Cir. 1984).
 
 
 7
 In this case, Eastlake makes unsubstantiated claims that he was discharged in retaliation for reporting Phillips' burglary activities. However, during depositions Chief Jumper and Dantzler both stated that Eastlake lost his job because of his participation in the Popeye's incident. In light of Defendants' consistent statements concerning the reasons for Eastlake's discharge and the lack of any evidence showing that Eastlake was dismissed for reporting Phillips' criminal activities, a rational trier of fact could not conclude that but for Eastlake's report, he would not have been discharged. See Johnson v. Town of Elizabethtown, 800 F.2d 404, 406-07 (4th Cir. 1986) (plaintiff's mere conjecture linking alleged protected speech to discharge insufficient to establish causal link in light of other reasons for discharge). Accordingly, the district court properly granted summary judgment for Defendants on this issue.
 
 
 8
 Eastlake also claims that he was denied due process because he was not notified that he was being discharged or given a reason for the discharge. To state an actionable procedural due process claim for deprivation of property, Eastlake must have a state-created property interest in continued employment.[1] Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985). This Court held in a similar case that no such property interest existed.
 
 
 9
 The City of Cayce has a council-manager form of government. Because the city manager is empowered to dismiss city employees for the good of the city, S.C. Code Ann. § 5-13-90(1) (Law. Co-op. 1976), Eastlake served at the pleasure of the city and did not have a property interest in continued employment. Accordingly, he did not have a due process right to notice and an opportunity for a hearing prior to dismissal. See Bunting v. City of Columbia, 639 F.2d 1090, 1093-94 (4th Cir. 1981).
 
 
 10
 Although no constitutional rights were implicated in Eastlake's dismissal, he was entitled to a grievance hearing concerning his dismissal under the County and Municipal Employees Grievance Procedure Act, S.C. Code Ann. §§ 8-17-110 through 8-17-160 (Law. Co-op. 1976 & Supp. 1992). Bunting, 639 F.2d at 1095. As permitted by S.C. Code Ann. § 8-17-120 (Law. Co-op. 1976), the City of Cayce has a grievance plan[2] that enables employees to request a grievance hearing.
 
 
 11
 Eastlake claims that he never requested a grievance hearing because he was not advised he was terminated. We find that Eastlake knew or should have known he had been terminated when Dantzler told him to turn in his badges and submit his resignation in the spring or summer of 1985. The City of Cayce cannot be expected "to provide a hearing to one who sleeps on his rights." Beckham v. Harris, 756 F.2d 1032, 1038 (4th Cir.), cert. denied, 474 U.S. 903 (1985). Accordingly, no issue of material fact existed that would enable a rational fact finder to conclude that Eastlake was deprived of any constitutional or statutory rights.
 
 
 12
 For these reasons, we affirm the district court's grant of summary judgment for Defendants. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 [1]
 As Defendants correctly state,"[l]iberty interests in an employment context pertain not to the right to continue in a given job but rather to the freedom to seek another." Morrash v. Strobel, 842 F.2d 64, 68 (4th Cir. 1987). Eastlake was assisted by a Cayce City employee in obtaining his first police job after leaving Cayce. Since then, he has had continued employment in the law enforcement field. Accordingly, he could not establish a deprivation of liberty due process claim
 
 
 [2]
 When Eastlake was hired, he received a copy of the Cayce Employment Handbook which, among other things, explained the grievance procedure for employees with work-related complaints