**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CHARLES MYRON BENNER, M.D.;
PATRICIA GURNEY-BENNER, M.D.,
individually and as Personal
Representatives of the Estate of
John Daniel Benner and by and on
behalf of Molly Benner, a minor,

No. 94-1845

Plaintiffs-Appellants,

v.

NATIONWIDE MUTUAL INSURANCE
COMPANY,
Defendant-Appellee.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Deborah K. Chasanow, District Judge.
(CA-93-2003-DKC)

Argued: January 31, 1996

Decided: August 28, 1996

Before HALL and MURNAGHAN, Circuit Judges, and STAMP,
Chief United States District Judge for the
Northern District of West Virginia, sitting by designation.

_____

Affirmed by published opinion. Judge Murnaghan wrote the opinion,
in which Judge Hall and Chief Judge Stamp joined.

_____

**COUNSEL**

**ARGUED:** James H. Falk, Jr., THE FALK LAW FIRM, Washing-
ton, D.C., for Appellants. Angus Robert Everton, MASON, KET-

TERMAN & MORGAN, Baltimore, Maryland, for Appellee. **ON BRIEF:** James H. Falk, Sr., THE FALK LAW FIRM, Washington, D.C., for Appellants. Charles N. Ketterman, MASON, KETTERMAN & MORGAN, Baltimore, Maryland, for Appellee.

_____

**OPINION**

MURNAGHAN, Circuit Judge:

Following the death of their son in a car crash, Appellants Charles Myron Benner and Patricia Gurney-Benner sought payment from their insurer, Nationwide Mutual Insurance Company. When they were denied full coverage for their claims, the Benners filed a declaratory judgment action in federal district court seeking a determination of the coverage limits of their primary automobile and umbrella insurance policies.[1] The district judge granted summary judgment to the insurer regarding the umbrella policy, but sent the remaining issues regarding the primary policy to a jury. After the jury returned a verdict in favor of Nationwide, the court issued an order declaring that the primary policy provided only minimal coverage for the Benners claims while the umbrella policy provided no coverage. The Benners have challenged the district court's order on several grounds. Because we find no error, we affirm.

I.

In April 1992, the Benners' young son, John Daniel, died in an automobile wreck which occurred while he was riding as a passenger in the family's 1991 Honda Accord. At that time, the Benners held two Nationwide insurance policies which covered the Honda: (1) a primary policy, called a Century II Auto Policy, originally purchased in 1985 and renewed in six-month intervals; and (2) a Personal Umbrella Policy providing additional coverage and renewed annually.

_____

[1] The Benners' minor daughter, Molly Benner, was also named as a plaintiff.

2

The Benners presented survival and wrongful death claims to Nationwide for more than $500,000 in damages arising from their son's death. They believed that they possessed $500,000 in primary coverage for damages sustained by any member of their family and umbrella coverage of $2,000,000.[2] Nationwide conducted an investigation of the accident and determined that the family baby sitter, who was driving the Benners' car with their permission, was solely at fault. The insurer also concluded that the Benners were entitled to a maximum of $20,000 on their claims because of a"household exclusion" that had been added to their primary policy and gone into effect on December 26, 1991. The exclusion provision limited to the statutory minimum requirements of Maryland law Nationwide's liability for bodily injury to an insured or any family member of an insured living in the same household.[3] The household exclusion had not previously been a part of the Benners' policy.[4]  In applying the exclusion

_____

[2] In July 1987, the Benners had increased to $500,000 per person/ $500,000 per occurrence, the bodily injury liability coverage limits in their primary policy in exchange for higher premium payments. Under the terms of the policy, the Benners were entitled to "benefits for accidental bodily injury involving a motor vehicle." The policy defined "bodily injury" as "bodily injury, sickness, disease or death" and provided basic personal injury protection to "you and your relatives" and any person injured "while using your auto with your permission."

For the next four years, the Benners renewed their primary policy with the same bodily injury coverage limits every six months. On December 10, 1991, the Benners renewed the policy for the six-month period from December 26, 1991, to June 26, 1992. Although the premium was higher, the declarations pages for the renewal period specified the same bodily injury liability coverage which the Benners had maintained for the preceding four years. Therefore, the Benners have maintained that they believed they possessed $500,000 in primary coverage for damages sustained by any member of their family. On the date of the wreck, the Benners also had umbrella coverage of up to $2,000,000.

[3] The Maryland Financial Responsibility Law requires the payment of minimum benefits for bodily injury or death resulting from an accident of up to $20,000 per person/$40,000 per occurrence. Md. Ann. Code art. 48A, § 541; Md. Transp. Code Ann. tit. 17,§ 103 (Michie 1992).
[4] The household exclusion appears in Endorsement 1952C, an amendatory endorsement approved by the Maryland Insurance Commissioner in

3

to the Benners' claims, Nationwide maintained that it had sent along with their policy renewal pages documents noticing and describing the exclusion. Because the Benners paid their premium on time and without protest, the household exclusion became effective during the next renewal period.[5] The umbrella policy also contained a household exclusion.[6]

After Nationwide denied the Benners the coverage they had anticipated, the Benners invoked federal diversity jurisdiction and filed an

_____

August 1991 for inclusion in Nationwide's Maryland auto insurance policies. Endorsement 1952C is a four-page document that describes various changes to the policies. The description of the household exclusion appears on page 2 as follows:

COVERAGE EXCLUSIONS

>Exclusions 3 and 4 are replaced and Exclusion 9 is added to read:

>. . .

>9. It does not cover bodily injury to any insured or any resident family member in an insured's household. However this exclusion applies only to the extent that the limits of liability for this exclusion exceed the limits of liability required by Maryland law.

[5] Nationwide mailed Endorsement 1952C and a notice highlighting policy changes (commonly referred to as a "stuffer") along with the renewal declaration pages sent to Maryland policyholders during the several months following the document's approval. The Benners received renewal pages dated December 2, 1991, during that time and paid the stated premium promptly.
[6] It reads:

>EXCLUSIONS

>Excess liability and additional coverage does not apply to:

>. . .

>10. bodily injury or personal injury to an insured who lives in your household.

The umbrella policy also defines "bodily injury" as including harm, sickness, disease, or death of a person.

4

action in the United States District Court for the District of Maryland.[7] They sought a declaratory judgment that the coverage limit for the wrongful death of their son under the primary policy was $500,000--not $20,000 as Nationwide asserted--and a declaratory judgment as to the available coverage under their umbrella policy. On cross motions for summary judgment, the district judge granted only Nationwide's motion concerning the umbrella policy. The court ruled that, as a matter of law, the notice requirements set forth in Article 48A, Section 240AA of the Maryland Insurance Code did not apply to the household exclusion contained in the primary policy and that there was no coverage available under the umbrella policy for the Benners' claims. The court also held that the Maryland Code imposed upon Nationwide a regulatory duty to provide the policyholder with notice of any reduction in coverage.

At the close of all the evidence at trial, both parties moved for judgment as a matter of law. Not granting either motion, the district court sent the case to the jury. The jury found in favor of Nationwide on all of the remaining issues concerning the primary policy. Four days later, the district judge entered judgment in accord with the jury's determinations, declaring that the primary auto policy provided coverage only up to $20,000 per person/$40,000 per occurrence and that the umbrella policy provided no coverage for the Benners' wrongful death and survival claims. The Benners filed a timely appeal.

II.

As to the primary policy, the Benners contend that the district court erred in failing to rule that, as a matter of law, the household exclusion was void. Under Maryland law, an insurer who inserts a coverage exclusion during renewal of a policy must satisfy certain conditions. Government Employees Ins. Co. v. Ropka, 536 A.2d 1214, 1219-28 (Md. Ct. Spec. App.), cert. denied, 541 A.2d 964 (Md.

_____

[7] Diversity jurisdiction existed pursuant to 28 U.S.C. § 1332 because the Benners are citizens of the state of Maryland while Nationwide is a corporation with its principal place of business in Columbus, Ohio, and the Benners sought declaratory judgment in a claim for damages in excess of $50,000.

5

1988). The insurer must draft the exclusion unambiguously, provide conspicuous notice of the change in coverage, provide legal consideration for the reduction in coverage and comply with all governing notice requirements. Id. The Benners maintain that Nationwide unilaterally added the household exclusion to their policy renewal without their knowledge. Specifically, they allege that Nationwide failed to deliver the amendatory endorsement and stuffer to them, that Nationwide failed to comply with Maryland's statutory and common law notice requirements, that the household exclusion is ambiguous and that there was no consideration supporting the reduction in coverage. The jury specifically found against the Benners on each of these issues, after the judge had already ruled that Maryland's enhanced notice requirements for changes in auto insurance policies did not apply.

In general, we review the district court's conclusions of law de novo. United States v. Smith, 30 F.3d 568, 571 (4th Cir.), cert. denied, 115 S. Ct. 604 (1994). Because there was a full trial and final judgment on the merits, we may not review the district courts pre-trial denial of summary judgment as to the primary policy. See Chesapeake Paper Prods. Co. v. Stone & Webster Eng'g Corp., 51 F.3d 1229, 1234-37 (4th Cir. 1995) (adopting, for various reasons, the rule that denial of summary judgment is not reviewable on appeal after a full trial and final judgment on the merits of the case has occurred, resolving the factual issues). We may review, however, the district court's denial of the Benners' motion for judgment as a matter of law raising legal issues pursuant to Rule 50 of the Federal Rules of Civil Procedure.

While the Benners did move for judgment as a matter of law at the close of all the evidence--the equivalent of seeking a directed verdict --the record before us indicates that they failed to renew their motion after the jury verdict as required by Rule 50(b). The Benners' omission limits our remedial power, but not our ability to review the alleged error. See Morrash v. Strobel, 842 F.2d 64, 69-70 (4th Cir. 1987) (after finding that the trial court erred in denying a motion for directed verdict, stating that party's failure to move for judgment n.o.v. limited the appellate court to vacating judgment and remanding for new trial); Smith v. Trans-World Drilling Co., 772 F.2d 157, 162 (5th Cir. 1985) (same). The prerequisite for reviewing the sufficiency

6

of the evidence on appeal is a proper pre-verdict motion at trial for judgment as a matter of law pursuant to Rule 50(a). See Bristol Steel & Iron Works, Inc., v. Bethlehem Steel Corp., 41 F.3d 182, 186-87 (4th Cir. 1994) (observing that "[i]t is well settled that in the absence of a motion for directed verdict, the sufficiency of the evidence supporting the jury's findings is not reviewable on appeal") (citation omitted); Smith, 772 F.2d at 160 (finding motion for directed verdict under Rule 50(a) adequate to preserve sufficiency of evidence argument on appeal despite failure to move for judgment n.o.v. under Rule 50(b)). In the absence of a proper Rule 50(b) motion after the verdict, we cannot order an entry of judgment contrary to that made by the district court as the Benners seek. See Johnson v. New York, N.H. & H. R. Co., 344 U.S. 48, 50 (1952) (holding that failure to move for judgment n.o.v. pursuant to Rule 50(b) deprives the appellate court of power to order entry of judgment); Cone v. West Virginia Pulp & Paper Co., 330 U.S. 212, 218 (1947) (same); Morrash, 842 F.2d at 70 (applying rule). If we find error, we may only vacate and remand. Morrash, 842 F.2d at 70; Smith, 772 F.2d at 162.

Judgment as a matter of law is proper "when without weighing the credibility of the evidence there can be but one reasonable conclusion as to the proper judgment." Singer v. Dungan , 45 F.3d 823, 826 (4th Cir. 1995) (citation omitted). Our review of the district court's ruling on a Rule 50 motion for judgment a matter of law is plenary. Benesh v. Amphenol Corp. (In re Wildewood Litigation), 52 F.3d 499, 502 (4th Cir. 1995). We are constrained, however, to view the evidence in the light most favorable to Nationwide in determining whether a reasonable jury could reach but one conclusion. **8** Westfarm Assocs. Ltd. Partnership v. Washington Suburban Sanitation Comm'n, 66 F.3d 669, 683 (4th Cir. 1995), cert. denied, 116 S. Ct. 1318 (1996); Benesh, 52 F.3d at 502. On review, we may neither weigh the evidence nor judge the credibility of witnesses. Tennant v. Peoria &

_____

**8** Although sometimes worded differently depending on the timing of the motion, the standard for reviewing the denial of a pre-verdict and a post-verdict motion for judgment as a matter of law is essentially the same. See 5A Moore's Federal Practice ¶ 50.01-1 at 50-21 (1996) (observing that 1991 changes to Rule 50 substitute the same terminology for both motions partly because they are "judged under the same standards and raise precisely the same issues for the judge's consideration").

Pekin Union Ry., 321 U.S. 29, 35 (1944); GSM Dealer Servs. Inc. v. Chrysler Corp., 32 F.3d 139, 142 (4th Cir. 1994).

Finally, because the matter is before us in diversity, we are bound by the applicable state substantive law. 28 U.S.C.§ 1652; Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).

A. Receipt of Insurance Documents

Under Maryland law, a presumption of delivery and receipt of mail arises when material is properly mailed. Border v. Grooms, 297 A.2d 81, 83 (Md. 1972); McFerren v. Goldsmith-Stern Co., 113 A. 107, 109 (Md. 1921). Evidence of ordinary business practices concerning the mailing of notices is sufficient to create the presumption of both sending and receiving. Borg-Warner Acceptance Corp. v. Rossi, 365 F. Supp. 56, 61 (D. Md. 1972) (applying Maryland law), aff'd, 485 F.2d 1388 (4th Cir. 1973); Mohr v. Universal C.I.T. Credit Corp., 140 A.2d 49, 52 (Md. 1958). While the presumption may be rebutted so as to create a question of fact, testimony by the addressee that he did not receive, or does not remember receiving, the material is not conclusive. Border, 297 A.2d at 83; McFerren, 113 A. at 109. The trier of fact should consider that proof along with all of the other evidence offered in the case to determine whether the item was mailed and received. Border, 297 A.2d at 83; McFerren, 133 A. at 109. Not only has the presumption been applied in the insurance context, see Bock v. Insurance Comm'r, 581 A.2d 857, 861-63 (Md. Ct. Spec. App. 1990), but the Maryland Insurance Code makes the general presumption applicable to an insurers mailing of premium notices.[9]

On review of the record, we find the jury's determination that the Benners received the endorsement and stuffer pertaining to the household exclusion reasonable. Despite having received the declaration pages for the renewal period of December 26, 1991, to June 26, 1992,

_____

[9] The section imposes a duty on insurers to provide each policyholder with notice that its renewal premium is due at least 17 days before the due date. Md. Ann. Code art. 48A, § 240B(a) (Michie 1994). That duty is deemed discharged if the insurer shows that its established procedures would have resulted in the placing of the notice of renewal premium due in the U.S. mail. § 240B(c).

and paying the stated premium on time, the Benners alleged that they never received the accompanying documents pertaining to the change in coverage. The Benners' denial of receipt failed as a matter of law to overcome the presumption created by Nationwide's evidence that it mailed the documents as part of its renewal of the Benners' policy for that period, as it did for all other policy renewals at that time.

Nationwide presented proof that it ordinarily mailed amendatory endorsements and stuffers along with renewal pages and that employees similarly mailed Endorsement 1952C from the company's Annapolis office to Maryland policyholders up for renewal during the relevant time period. In addition, Charles Benner testified that he regularly saved important insurance documents and that he did not recall receiving or reading the endorsement or the stuffer, but also conceded that he was not certain that he had not received the documents and that he had, at times, discarded material sent to him by Nationwide. Finally, Nationwide elicited testimony that an activity log which the Benners claimed failed to verify that the documents were sent to them did not include the 1991 mailing of Endorsement 1952C.

In short, while the evidence may not be overwhelmingly in favor of Nationwide, it is sufficient to support the jury's verdict.

B. Notice

In Maryland, an insured person is "protected by a dual scheme of statutory and common law notice requirements." Ropka, 536 A.2d at 1223. The Benners have argued that, in inserting the household exclusion, Nationwide failed as a matter of law to satisfy the governing requirements and thus provided inadequate notice of the change.

Maryland has statutory and regulatory standards encompassing automobile insurance policies. The Maryland Insurance Code sets forth enhanced notice requirements for insurers seeking to change coverage in a motor vehicle liability insurance policy. Md. Ann. Code art. 48A, § 240AA. The statute provides that no insurer may cancel, fail to renew, reduce coverage, or increase a premium for coverage under a motor vehicle liability policy without giving notice of the action on or before 45 days prior to its proposed date. § 240AA(a). The law expressly exempts certain types of actions, however. The

9

statute provides that the special notice requirements do not apply when the decrease in coverage is either "part of a general reduction in coverage approved by the Commissioner" or intended to satisfy requirements set forth elsewhere in the article.§ 240AA(a)(iii). The statute also excludes increases in premiums which are "part of a general increase in premiums which have been approved by the Commissioner." § 240AA(a)(ii). The distinction thus appears to turn on whether the change in coverage is applicable to all policies across the board, or pertains only to an individual policyholder.

Although the Benners maintain that the special notice requirement applies, the district court correctly concluded that the household exclusion at issue falls outside the statute. Nationwide sought and received approval from the Maryland Insurance Commissioner for a general rate increase of 2.3 percent and the household exclusion at the same time. The exclusion can be fairly characterized as part of "a general reduction in coverage approved by the Commissioner" as it was included in Endorsement 1952C approved on August 6, 1991, and was part of the changes made applicable to all new policies and all existing policies renewed after the approval. Similarly, the premiums charged can be said to have been approved by the Commissioner as part of a general rate approval because their calculation was reflected in the documentation submitted in support of the rate increase. Therefore, the policy is governed by the general notice requirements set forth in the Maryland Code of Regulations.**10**

_____

**10** The Benners rely on Ropka , 536 A.2d at 1226, to support their position that Section 240AA applies. In that opinion, however, the Maryland Court of Special Appeals never ruled upon the applicability of Section 240AA. Instead, the court remanded the issue to the trial court. While the trial court did apply Section 240AA to the general reduction of coverage approved by the Commissioner on remand, it offered only cursory explanation for doing so. Government Employees Ins. Co. v. Ropka, No. CV-0825, slip op. at 3-4 (Cir. Ct. Carroll County Nov. 29, 1988). In addition, the Court of Special Appeals affirmed the lower court's decision without addressing the application. Government Employees Ins. Co. v. Ropka, No. 26, Sept. Term 1989, slip op. at 3 (Md. Ct. Spec. App. Sept. 29, 1989). Therefore, because we can find no reasoned analysis of Section 240AA concluding that it applies to a general reduction in coverage approved by the Commissioner and because the plain meaning derived

10

Maryland's notice regulations expressly apply to all insurance policies except motor vehicle liability policies governed by Section 240AA. The relevant administrative regulations require casualty insurers who intend to reduce or eliminate coverage to "clearly notify the policyholder of the action that has been taken." Md. Regs. Code, tit. 9, § 30.32.01 (1981). They further mandate that insurers decreasing coverage in a primary casualty policy upon renewal or by endorsement not at the request of the insured must "give the insured, in general terms, written notice of the change in the policy.[11] § 30.32.02.

The applicable common law notice requirements are similar. Maryland recognizes that a continuing insurance policy may properly be deemed a renewal, even if it contains terms different from the original policy. American Casualty Co. v. Resolution Trust Corp., 845 F. Supp. 318, 323 (D. Md. 1993); World Ins. Co. v. Perry, 124 A.2d 259, 262 (Md. 1956). An insured is entitled to assume that a renewal of his insurance contract will contain the same coverage as the prior contract unless the insurer has sent proper notice of any modifications. J.A.M. Assocs. of Baltimore v. Western World Ins. Co., 622 A.2d 818, 822 (Md. Ct. Spec. App. 1993); Ropka , 536 A.2d at 1222-23; see also Perry, 124 A.2d at 262. If an insurer intends to make a significant change in a policy upon renewal, it must provide reason-

_____

from the clear and unambiguous language of the statute suggests that it is inapplicable here, we conclude that Section 240AA does not apply. See Commissioner v. Bosch, 387 U.S. 456, 464-65 (1967) (state lower court decisions are not controlling when the highest state court has not "spoken on the point" and other persuasive authority suggests that the highest court "would decide otherwise").

[11] The regulation specifies that the insurer provide notice by way of the following phrase or its equivalent:

> Notice: Certain coverage in this policy has been eliminated or reduced, or a change has been made in the deductible. The description of the change in coverage or deductible is as follows:
> . . . .

§ 30.32.02. If an insurer changes a policy without giving proper notice, the policy "shall be treated as being in effect without the . . . reduction in coverage." § 30.32.03.

11

able notice as "a matter of fairness and of assuring mutual assent to what is in reality, a new contract." J.A.M. , 622 A.2d at 822. The notification should be made by "simply expressing" the changes under a conspicuous heading on the declaration pages or by separate endorsement mailed with the premium notice. Id.

Upon receipt of proper notice, the insured has the duty to read the notice, and the insurer is not responsible for an insured's failure to do so. Twelve Knotts Ltd. Partnership v. Fireman's Fund Ins. Co., 589 A.2d 105, 113 (Md. Ct. Spec. App. 1991); see also Shepard v. Keystone Ins. Co., 743 F. Supp. 429, 432 (D. Md. 1990) (applying Maryland law). Furthermore, when the insured accepts a policy, the insurer is entitled to assume that he accepts all of its stipulations, provided that they are legal and not contrary to public policy. Twelve Knotts, 589 A.2d at 113. If changes appear in the contract, the insured has a duty to examine them promptly and notify the insurer of his refusal to accept them. If the insured accepts the policy or retains it for an unreasonable length of time, the insurer may presume that he ratified any changes and agreed to all of the terms. Id.

We disagree with the Benners' assertion that Nationwide failed as a matter of law to meet both the statutory and common law notice requirements. Viewing the evidence in the light most favorable to Nationwide, we find sufficient support for the jury's finding of proper notice.

Again, despite the Benners' contention that they were never notified of the reduction in coverage, Nationwide's evidence and the Benners' timely payment of their renewal premium lead to an inference of receipt of notice. In addition, a reasonable jury could conclude that the documents themselves met the applicable notice requirements. The exclusion provision, which appears in the amendatory endorsement under the bold-faced heading entitled "Coverage Exclusions," is straightforward and expressed in unambiguous terms. It informs the policyholder that the policy will "not cover" bodily injury to any insured or resident family member beyond the limits required by Maryland law. Charles Benner testified at trial that, if he had read the policy exclusion in 1991, he would have understood that it reduced his coverage. The endorsement further highlights the significance of

12

its contents by stating at the top, "[p]lease attach this important addition to your auto policy."

The stuffer provides independent notice, explaining that the amendatory endorsement excludes certain matters from coverage and providing a brief description of the household exclusion. Not only does the insertion of a new exclusion imply a reduction in coverage by its very nature, but the stuffer specifically requests the policyholder "to read each endorsement to see how your coverage may be affected," to save the endorsements and to contact a Nationwide agent concerning any questions. Finally, the declarations pages refer to Endorsement 1952C.

While none of the documents use the word "reduction" nor fully explain how the household exemption will affect the Benners' coverage, the applicable regulation does not mandate such precision. It requires only that insurers advise their policyholders, "in general terms," of any changes in the coverage. The jury could reasonably conclude that Nationwide did so with the declaration pages, the endorsement and the stuffer.

Finally, the declaration pages alone are sufficient to support a jury finding that the Benners either were, or should have been, on notice of the exclusion. Not only is it undisputed that the Benners received the renewal declaration pages which refer to Endorsement 1952C, but Charles Benner testified that he regularly looks to the last sheet of the declaration pages for notice of changes in his policy. Because the Benners paid the renewal premium on time and without objection to the reduction in coverage, the jury could reasonably find Nationwide entitled to presume that the Benners ratified the changes and agreed to the terms of renewal.

C. Ambiguity of Endorsement 1952C

In the interpretation of insurance contracts under Maryland law, "words are to be given their customary and normal meaning." Gov't Employees Ins. Co. v. DeJames, 261 A.2d 747, 749 (Md. 1970); see also National Grange Mut. Ins. Co. v. Pinkney, 399 A.2d 877, 882 (Md. 1979). The interpreter should focus on the written language setting forth the terms of the agreement and use an objective test to

13

determine the intent of the parties based on the meaning a reasonable person would attribute to the words used. <u>DeLeon Enters., Inc. v. Zaino</u>, 608 A.2d 828, 832 (Md. Ct. Spec. App.), <u>cert. denied</u>, 614 A.2d 84 (Md. 1992). Absent ambiguity, the construction of an insurance contract is a matter within the province of the court. <u>DeJames</u>, 261 A.2d at 749. If the language is ambiguous, however, the contract must be submitted to the jury. <u>Id.</u> "Maryland law . . . is not hostile to insurers in the initial judicial construction of policy provisions. . . . Of course, if a <u>true</u> ambiguity is found, then it is generally to be resolved against the insurer." <u>Alcolac Inc. v. California Union Ins. Co.</u>, 716 F. Supp. 1546, 1547 (D. Md. 1989) (applying Maryland law).

Not only did the Benners fail to prove conclusively that the exclusion is ambiguous as a matter of law, but Nationwide similarly failed to establish that the provision is unambiguous. We find that the jury's resolution of the matter in favor of the insurer is reasonable and supported by sufficient evidence.

The provision specifies in plain, unambiguous and easily understood language that the policy does not cover bodily injury to any insured or member of an insured's household subject to the minimum coverage required by state law. Although the exclusion refers to "the limits of liability required by Maryland Law" without specifying that such limits may be found in the Maryland Financial Responsibility Law, the omission does not render the exclusion ambiguous or open to interpretation as there is no state law requiring identification of the statute in insurance documents. In enforcing exclusions in insurance policies, Maryland courts generally read in the limits set by the state's financial responsibility laws, whether or not those restrictions are specifically referenced. <u>See, e.g.</u>, <u>State Farm Mut. Auto. Ins. Co. v. Nationwide Mut. Ins. Co.</u>, 516 A.2d 586, 591-92 (Md. 1986); <u>West American Ins. Co. v. Popa</u>, 670 A.2d 1021, 1028-29 (Md. Ct. Spec. App. 1996). Furthermore, Maryland courts follow the general rule of permitting contracts to incorporate by reference the content of other documents. <u>See Wheaton Triangle Lanes, Inc. v. Rinaldi</u>, 204 A.2d 537, 540 (Md. 1964); <u>Ray v. William G. Eurice & Bros.</u>, 93 A.2d 272, 279 (Md. 1952).

Moreover, an insurance policy is not rendered ambiguous merely by virtue of the fact that it requires careful reading, <u>Viger v. Commer-</u>

14

cial Ins. Co. of Newark, N.J., 707 F.2d 769, 774 (3rd Cir. 1983) (applying Pennsylvania law), or analysis, Alpha Therapeutic Corp. v. St. Paul Fire & Marine Ins. Co., 890 F.2d 368, 370 (11th Cir. 1989) (construing Florida law). Charles Benner testified at trial that he would have understood the household exclusion if he had read it when renewing his policy in December 1991. He also stated that the exclusion would not have been any clearer to him if it mentioned the Maryland Financial Responsibility Law instead of merely "Maryland Law." He said that, with either wording, he would have called his insurance agent to find out the applicable limits of Maryland law. Viewing the evidence in the light most favorable to Nationwide, the jury's determination that the exclusion is sufficiently explanatory is reasonable.

D. Consideration for Reduction in Coverage

Modification of an insurance policy generally requires consideration, although the consideration required differs with the timing of the change. See 13A Appleman Insurance Law & Practice § 7603, at 275-83 (1976). Maryland courts have recognized that the renewal of an insurance policy is not a new contract, but an extension of the policy's life when made pursuant to a policy provision concerning renewal. Ropka, 536 A.2d at 1225; Perry , 124 A.2d at 262; see also American Casualty, 845 F. Supp. at 323. Therefore, when terms are changed in a renewal policy, Maryland law requires both proper notice and valid consideration, but not additional consideration.

In general, sufficient consideration consists of a detriment to the insurer and a benefit to the insured. Ropka, 536 A.2d at 1227. An insured's premium typically provides consideration for the benefits provided by the policy. Id. Maryland courts hold that an attempted policy modification should be voided for lack of consideration if the insured can show that he received less coverage than was commensurate with the amount he paid. Id.

The record before us shows that the Benners' premium for primary coverage of their Honda Accord increased by 4.3 percent for the relevant renewal period. The Benners therefore contend that no consideration supported the renewal contract with its decreased coverage because they "paid more and got less." Nationwide responds that

15

under Maryland law, "a decrease in premium owing to a decrease in coverage can be completely obliterated by a rate increase that goes into effect at the same time." Ropka, 536 A.2d at 1226-27. The insurer maintains that just such an offset occurred in the present matter because the Benners' premium increase would have been 6.7 percent had the reduced coverage from the household exclusion not been taken into account.[12] Because the record does not compel a different conclusion and the jury's finding of valid consideration is reasonable and supported by sufficient evidence, the district court properly entered judgment in accordance with it.

At trial, a Nationwide employee testified that in determining the proper premium to be charged, the company used the rate of accidents and projected the amount of losses requiring coverage. The employee said that Nationwide would have sought a 6.7 percent increase in the Benners' premium if the household exclusion had not been added. Instead, the company added the household exclusion and then, in calculating rates, factored in a 5 percent decrease in the amount of projected bodily injury losses to offset the reduced coverage caused by the new exclusion. The Nationwide representative testified that as a result of the general rate increase, the household exclusion and other factors, all Nationwide auto policy holders ended up with a 4.3 percent premium increase.

Although the Benners argue that Nationwide's consideration was illusory because the insurer never actually sought the higher rate increase, Nationwide's evidence is sufficient to support the jury's conclusion that merely foregoing the opportunity to seek a greater

---

[12] The Benners' bodily injury liability premium for the Honda Accord increased from $127.50 to $133.00 for the December 26, 1991, to June 6, 1992, renewal period. Nationwide presented evidence that the $5.50, or 4.3 percent, increase in premium resulted from a general base rate increase of 2.3 percent for all Nationwide auto policyholders in Maryland and other factors. Nationwide relies on the 4.3 percent increase in premium as consideration for its $480,000 reduction in the Benners' coverage, on the basis that it gave up the opportunity to impose an even greater increase in premiums. Nationwide sought and received approval for the general rate increase and the household exclusion at the same time.

16

increase constitutes valid consideration. Moreover, while there is no way of knowing whether the Commissioner would have approved a greater premium increase if sought, there is no evidence indicating that the Commissioner would have refused. The jury could infer that approval would be likely from the fact that the Commissioner did consent to the general increase of 2.3 percent which Nationwide supported with documentation showing that it had reduced the overall premium by factoring in a 5-percent decrease to reflect the reduced coverage from the household exclusion.

III.

The Benners' umbrella policy purports to provide excess liability and additional coverage, but it too has a household exclusion provision. That exclusion exempts damages from "[b]odily injury or personal injury to an insured who lives in your household." The Benners concede that the exclusion applies to the damages sought in their survival claim because their son experienced a bodily injury, i.e., death. However, they maintain that they are entitled to wrongful death damages to compensate for the emotional loss they suffered because such recovery would not amount to damages for the bodily injury itself. They argue that the umbrella policy's exclusion, unlike the exclusion provision in the primary policy, does not bar derivative claims.

We review the district court's denial of summary judgment de novo. Fuisz v. Selective Ins. Co. of Am., 61 F.3d 238, 241 (4th Cir. 1995).**13** Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Like the district court, we make this determination viewing the evidence and making all inferences in the light most favorable to the nonmoving party. United States v. Diebold Inc., 369 U.S. 654, 655 (1962) (per curiam); Hinkleman v. Shell

_____

**13** With regard to the umbrella policy, the district court did grant Nationwide's corresponding motion for summary judgment. Therefore, the rule articulated in Chesapeake precluding appellate review of summary judgment denial does not apply. 51 F.3d at 1237 n. 11 ("Our holding does not apply to decisions reviewing denied motions for summary judgment when the district court granted the opposing party's corresponding summary judgment motion.").

17

Oil Co., 962 F.2d 372, 375 (4th Cir.), cert. denied, 506 U.S. 1041 (1992).

Even if we assume that the Benners are correct in their assertion that wrongful death actions are distinct from claims for bodily injury, we cannot read the umbrella policy to extend coverage to their wrongful death claim. Again, Maryland follows the objective law of contracts and requires courts to interpret insurance contracts by giving words their customary and normal meaning. DeJames, 261 A.2d at 749. "[W]here an insurance company, in attempting to limit coverage, employs ambiguous language, the ambiguity will be resolved against it as the one who drafted the instrument, as is true in construction of contracts generally. Where there is no ambiguity in an insurance contract, however, the Court has no alternative but to enforce the policy's terms." Blue Bird Cab. Co. v. Amalgamated Casualty Ins. Co., 675 A.2d 122, 1996 WL 148962, at *2 (Md. Ct. Spec. App. Apr. 2, 1996). Like the district court, we find no ambiguity in the umbrella policy and thus must give effect to its "plain meaning." Aetna Casualty & Surety Co. v. Insurance Comm'r, 445 A.2d 14, 19 (Md. 1982).

The policy clearly sets forth the applicable definitions and terms of coverage. Its provisions specify that coverage is available only for damages "due to an occurrence" and explain that an occurrence "must result in bodily injury, property damage or personal injury caused by an insured." The policy defines "bodily injury" as meaning "bodily harm, including resulting sickness, disease or death." In the present matter, therefore, coverage could only exist for damages arising out of bodily injury because the Benners brought no claims for property damage or personal injury. Because the household exclusion expressly eliminates payment of damages arising from bodily injury to a member of the household, the umbrella policy provides no coverage for the Benners' wrongful death claim.

Moreover, even if ambiguity did exist, we must still find in Nationwide's favor. If damages from bodily injury are different from damages from wrongful death as the Benners argue,[14] then there can be

_____

[14] Maryland courts ordinarily interpret provisions permitting an action for "bodily injury" and "personal injury" as not including an action for

18

no umbrella coverage for wrongful death damages because the policy clearly excludes any claim other than those for damages resulting from bodily injury, property damage or personal injury. On the other hand, if bodily injury damages include damages for wrongful death, as the umbrella policy seems to indicate by including "death" in its definition of "bodily injury",[15] then the damages sought are excluded by virtue of the policy's household exclusion. Using the same terms and definitions as the rest of the policy, the provision expressly excludes damages from bodily injury to an insured in the household.

Under any interpretation, the umbrella policy denies the Benners coverage for their wrongful death claim. Thus, the district court properly granted Nationwide's motion for summary judgment and ruled that the umbrella policy provided no payment.

IV.

While we find the outcome in the matter before us unhappy for the Benners, we believe it to be necessary under the governing law and facts as they were properly presented to the jury. For the reasons described above, the judgment is

AFFIRMED.

_____

wrongful death. United States v. Streidel, 620 A.2d 905, 910-15 (Md. 1993) (explaining that actions for "personal injury" and "bodily injury" are different from wrongful death actions and encompass damages for wrongful death only when such an interpretation is clearly intended); see also Daley v. United Servs. Auto. Ass'n, 541 A.2d 632, 636-37 (Md. 1988) (refusing to equate solatium damages claimed in a wrongful death action with "bodily injury" damages covered by the insurance policy at issue).

[15] Maryland courts do construe the term "bodily injury" to encompass an action for wrongful death when there is an indication that such interpretation was intended, such as by inclusion of the phrase "or death" or "including death" in the provision. See Streidel, 620 A.2d at 909-15 & n.7 (explaining distinction and providing examples).