UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

BELINDA MUOVICH,

*Plaintiff-Appellee,*

v.

RALEIGH COUNTY BOARD OF
EDUCATION, and Members of the
Raleigh County Board of Education;
LOUIS GALL, Member; PAUL
VENNARI, Member; MARGARET
SCOTT, Member; ROSCOE PLUMLEY,
Member; SHERRIE CUSHMAN,
Member,

*Defendants-Appellants.*

No. 02-1090

Appeal from the United States District Court
for the Southern District of West Virginia, at Beckley.
Robert C. Chambers, District Judge.
(CA-98-181-5)

Argued: January 23, 2003

Decided: February 27, 2003

Before WILKINSON, MICHAEL, and KING, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Niall Anthony Paul, SPILMAN, THOMAS & BATTLE,
P.L.L.C., Charleston, West Virginia, for Appellants. John William

Barrett, BARRETT LAW FIRM, P.L.L.C., Charleston, West Virginia, for Appellee. **ON BRIEF:** Eric E. Kinder, SPILMAN, THOMAS & BATTLE, P.L.L.C., Charleston, West Virginia, for Appellants. David L. Grubb, THE GRUBB LAW GROUP, Charleston, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

The Raleigh County Board of Education appeals a jury verdict in favor of the plaintiff, Belinda Muovich, on her claim under the West Virginia Human Rights Act that the Board failed to accommodate her disability. Finding no reversible error, we affirm.

### I.

Because the defendant appeals from a jury verdict in favor of the plaintiff, we construe the facts in the light most favorable to the plaintiff. *See Sales v. Grant*, 158 F.3d 768, 775 (4th Cir. 1998). Belinda Muovich, the plaintiff, was a special education teacher employed by the defendant, the Raleigh County Board of Education (the Board). In 1987 Muovich began working at Coal City Elementary School; once there, she began having sinus and respiratory problems. She had sinus surgery in 1989 and 1991, but her condition got much worse when the school installed a new carpet in late 1991. (Carpet glue irritated Muovich's respiratory system.) Muovich asked the principal, Jerry Redden, to install the carpet during the summer or on a weekend, but Redden refused this request. She later asked Redden to remove the carpet from her classroom altogether; Redden refused and told her she was crazy.

Other activities in the school also exacerbated Muovich's condition. In the fall of 1992 Muovich informed Redden that the glue the

janitors used to repair baseboards bothered her; the custodians, however, continued to use it. Similarly, Redden refused to allow Muovich to switch from cafeteria duty to recess duty, even though the bleach used to clean the cafeteria exacerbated her condition. One of the school's janitors also suggested to Redden that Muovich be excused from cafeteria duty; Redden told the janitor that Muovich was "nuts." In the fall of 1994 Muovich asked Redden if the school could use a cleaning product called Odor Ban that was not a respiratory irritant, but Redden declined to switch.

In 1995 Muovich made several requests to Redden. She asked that the janitors flush the bleach used in the toilets, which the school had been using to combat sewer gas odor, rather than leaving it in the toilets overnight. Second, she again asked to be relieved from supervising students in the cafeteria. Third, she repeated her request that the school switch its cleaning products. Finally, she asked that one teachers' bathroom be made scent-free. Redden refused all of these requests and told Muovich that the last was "ridiculous."

In January 1996 Redden told Muovich to get out of his office because "he was tired of hearing her complaints." Later that month the school began using a product called Gosh to deal with the sewer gas problem. Muovich had a bad reaction to the Gosh, and her doctor wrote a letter to the school suggesting that Gosh be used only sparingly. Redden, however, told a custodian that "he'd be damned if he would change any cleaning procedures to suit one person." He also told the janitor to spray Gosh in the air, but to be sure that no one saw him doing it.

In April 1996 Muovich stopped teaching because of her poor health, although she intended to return to school when she felt better. In June 1997, however, the Board sent her a letter saying she would be fired if she did not return to work in thirty days. In response, Muovich sent the Board a letter from her doctor with twenty-nine requested accommodations, covering the spectrum from a system of monitoring indoor air quality and preventive maintenance on air exchange systems to elimination of the use of all chemicals to achieve a zero risk of irritants in the workplace. The Board did not respond.

In March 1998 Muovich sued the Board in the Southern District of West Virginia, claiming a failure to accommodate under the Ameri-

cans with Disabilities Act (the ADA), 42 U.S.C. § 12101, et seq. She later amended her complaint to include a failure to accommodate claim based on West Virginia's Human Rights Act. *See* W. Va. Code § 5-11-9 (2003). In August 2001 Muovich voluntarily dismissed her ADA claim, but the district court retained jurisdiction over the supplemental state law claim.

The district court denied the Board's motion for summary judgment, and after a six-day trial, a jury found for Muovich. The jury awarded her $50,000 in compensatory damages, $175,000 in back pay, and $75,000 for emotional distress. The district court denied the Board's motion to set aside the verdict and grant a new trial. The court also awarded Muovich attorney's fees and costs of over $260,000 as well as pre- and post-judgment interest. The Board appeals, claiming error on several grounds.

## II.

First, the Board raises several claims of error on evidentiary matters. The Board, however, failed to object at trial to all but two of these claimed errors. When there was no objection at trial, we review for plain error. *In re Celotex Corp.*, 124 F.3d 619, 630-31 (4th Cir. 1997); *see also United States v. France*, 164 F.3d 203, 207 (4th Cir. 1998). To prevail under a plain error analysis, the Board must demonstrate that there was an error, the error was plain, the error affected its substantial rights, and the error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Celotex*, 124 F.3d at 630-31 (explaining that civil litigants must at least meet the standard for plain error applied in criminal cases).

To succeed in a failure to accommodate claim under the West Virginia Human Rights Act, Muovich was required to demonstrate that: (1) she was a qualified person with a disability; (2) the Board was aware of her disability; (3) she required an accommodation to perform her job; (4) a reasonable accommodation existed that would have allowed her to perform her job; (5) the Board knew or should have known of her needs; and (6) the Board failed to provide the accommodation. *See Skaggs v. Elk Run Coal Co.*, 479 S.E.2d 561, 575 (W. Va. 1996). With the basic structure of a failure to accommodate claim in mind, we turn to the Board's claims of error.

The Board first argues that evidence of actions that led to or exacerbated Muovich's condition is only relevant to the cause of her injuries and is therefore inadmissible in a suit based on a failure to accommodate claim. The evidence, however, is relevant to the nature of Muovich's ailment and the reasons for the particular accommodations she requested. The Board, for example, cites as error the admission of evidence that the carpet installation made Muovich ill. But this evidence is relevant to the point that Muovich asked the school to accommodate her by installing the carpet while school was not in session. We therefore conclude that it was not plain error for the district court to have admitted evidence about actions taken by the school that caused or worsened her illness.

The Board also claims that the district court erred by admitting evidence that students and other teachers had been made sick by the carpet installation. This evidence, however, was admissible to show that the school officials were aware of the problems with the carpet installation, that Muovich's requested accommodation was reasonable, and that school officials were aware of the need for such an accommodation. The court's decision to admit this evidence was not plain error. It was error to admit testimony by certain teachers that they believed the carpet installation was problematic based on information they learned from books and televison shows. This testimony, however, was limited and did not affect the Board's substantial rights. The focus of the testimony of these witnesses was on Redden's response to their complaints. The admission of the limited amount of third-hand information, therefore, does not satisfy the elements for plain error.

The Board additionally faults the district court for admitting certain credibility evidence; the Board objected to this testimony and therefore preserved this claim. If the district court erred in admitting credibility evidence, we will nevertheless uphold the verdict if the error was harmless. *See Taylor v. Va. Union Univ.*, 193 F.3d 219, 235 (4th Cir. 1999). The error is harmless unless the jury's judgment was substantially swayed by the error. *Id.* Muovich's counsel asked witnesses whether they would be more likely to believe a version of the facts told by the principal or by Muovich. The admission of this testimony was erroneous. Nevertheless, we do not believe this substantially swayed the jury's judgment. The jury had an opportunity to hear from

and observe both Muovich and Redden and therefore form their own views of the credibility of each. Moreover, although this case is in some ways a dispute between Muovich and Redden, each side presented multiple witnesses to support its version of the story. As a result, the outcome of the case did not hinge solely on a determination of the credibility of these two witnesses. The admission of the testimony about relative admissibility, while error, did not substantially affect the verdict. The error is therefore harmless.

Finally, the Board claims that the district court erroneously admitted various pieces of scientific evidence. The Board claims that it was denied a hearing on scientific evidence pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Before trial the Board filed a motion in limine seeking exclusion of evidence about Multiple Chemical Sensitivity (MCS). However, at the pretrial conference when the Board's motion would have been considered, Muovich's counsel agreed that MCS was not a legitimate diagnosis and said instead that Muovich had chemical irritant rhinosinusitis (CIR). Because the argument about MCS was then moot, the court allowed the Board to renew its objection to testimony about CIR after it had time to investigate the claim. The Board, however, never renewed the objection and therefore never requested a *Daubert* hearing on the admissibility of evidence about CIR. The court is not required to hold a *Daubert* hearing if neither party requests one. *Cf. Md. Casualty Co. v. Therm-O-Disc, Inc.*, 137 F.3d 780, 783 (4th Cir. 1998). Accordingly, we do not believe that the district court abused its discretion in admitting evidence about CIR without holding a *Daubert* hearing.

The Board objects to the admission of other scientific evidence at trial, relying in part on its pretrial motion seeking the exclusion of evidence about MCS. Because the Board did file a motion in limine on the admission of MCS — and Muovich seems to have agreed that this evidence was inadmissible — it may have preserved this objection. *See United States v. Williams*, 81 F.3d 1321, 1325-26 (4th Cir. 1996). The Board, however, does not point to erroneously admitted evidence of MCS. Instead, it focuses on the admission of evidence about sick building syndrome. The Board did in fact object to admission of this evidence and therefore preserved this claim. *See id.* Even if the admission of the evidence was erroneous, however, we cannot

say that the jury's judgment was substantially swayed by the error. *See Taylor*, 193 F.3d at 235. Muovich's argument was that she suffered from CIR, not sick building syndrome, and very little evidence on sick building syndrome was actually introduced. These brief mentions of an ailment that Muovich did not claim to have cannot be said to have swayed the jury's decision; the error, if any, is therefore harmless.

### III.

The Board also complains that the court failed to give two of its proposed jury instructions. Jury instructions are adequate when the instructions "construed as a whole, and in light of the whole record, adequately informed the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the objecting party." *Spell v. McDaniel*, 824 F.2d 1380, 1395 (4th Cir. 1987). Moreover, because the Board failed to object before the jury commenced deliberations, we review the district court's refusal of the Board's requested instructions for plain error. *Taylor*, 193 F.3d at 239-40. Because both of the proposed instructions are misleading and both are arguably incorrect, the district court did not err in refusing to give these instructions.

First, the Board says the court should have instructed the jury that sick building syndrome cannot be the basis for a disability because it restricts the plaintiff's ability to work in only one location. As discussed above, however, Muovich's case centered on the fact that she suffered from CIR, not sick building syndrome; discussing a different ailment in the jury instructions is likely to be confusing. Moreover, it may be that under West Virginia law a plaintiff can recover if she is prevented from working in only one particular job. *See Stone v. St. Joseph's Hosp.*, 538 S.E.2d 389, 401-06 (W. Va. 2000) (discussing the shortcomings of a rule that prevents claims by those excluded from only one job). Because the proposed instruction was irrelevant and would have been confusing in the circumstances, we do not decide whether it was a correct statement of West Virginia law. Second, the Board requested an instruction explaining that it should prevail if Muovich's only injuries were those that began when the school installed the carpet. The district court, however, gave an instruction that clearly explained the elements of Muovich's failure to accommo-

date claim. The Board's proposed instruction was likely to cause juror confusion about the elements of Muovich's claim. We therefore find no error, much less plain error, in the district court's refusal to give these two instructions.

## IV.

The Board challenges the district court's denial of its summary judgment motion and seeks a new trial or a judgment as a matter of law. Because the district court's denial of the Board's motion for summary judgment is unreviewable after the dispute has been decided on the merits, *see Benner v. Nationwide Mutual Ins. Co.*, 93 F.3d 1228, 1233 (4th Cir. 1996), we turn immediately to the Board's request for a new trial or a judgment as a matter of law.

The Board did not renew its Rule 50 motion for judgment as a matter of law at the end of the trial. Its post-trial motion is labeled as a Rule 59 and Rule 60 motion, seeking a new trial or relief from the judgment. Nevertheless, we may still consider the sufficiency of the evidence against the Board. *See Benner*, 93 F.3d at 1234. If the Board could prevail on this basis, however, the Board's error in its characterization of its motion would prevent us from entering judgment for the Board; we would instead remand the case to the district court. *See id.*

No remedy, however, is called for here because a rational jury could have found for Muovich. *Cf. id.* We reject the Board's argument that it did not have to accommodate Muovich because by the time of trial she could not work even with an accommodation and therefore was not a qualified person with a disability. We have previously concluded that under the ADA, the critical time period is the time of the adverse employment action, rather than the time of trial. *See EEOC v. Stowe-Pharr Mills, Inc.*, 216 F.3d 373, 379 (4th Cir. 2000). Although the West Virginia Supreme Court of Appeals has not decided whether the same rule applies to the West Virginia Human Rights Act, that court's opinions suggest it is unlikely to adopt a different interpretation. *See Skaggs*, 479 S.E.2d at 574 (stressing that the Human Rights Act should be liberally construed). Moreover, the West Virginia court has cited federal anti-discrimination law as a guide to interpreting the state's law. *See id.* at 578-79. Finally, we decline to

adopt an interpretation of West Virginia law that would allow employers to fire employees that are currently healthy but have degenerative illnesses, knowing that by the time the plaintiffs reach trial, they will be so disabled that they will no longer be qualified persons with a disability. For all of these reasons, we conclude that under the West Virginia Human Rights Act we should look to the time of adverse employment action rather than the date of trial in determining whether Muovich is a qualified individual.

We also disagree with the Board that Muovich was not disabled before she left the school because she continued working despite her illness. We see no reason to penalize a plaintiff who is willing to continue working, despite substantial discomfort and the risk of worsening — and possibly permanent — injury, when her employer refuses to provide a reasonable accommodation. *See Casteel v. Consolidation Coal Co.*, 383 S.E.2d 305, 308 (W. Va. 1989) (allowing claim for discrimination when the plaintiff continued to work without accommodation despite severe pain).

Further, we are not persuaded by the Board's argument that no reasonable accommodation would have allowed Muovich to continue working. A reasonable jury could have concluded that if the Board had taken early remedial steps as requested by Muovich—such as replacing the carpet during the summer or using cleaning products that were not respiratory irritants—Muovich could have remained in her position at the school.

## V.

The Board also disputes the size of the district court's award of attorney's fees to Muovich. We will reverse the district court's decision on attorney's fees only if it was clearly wrong. *Cf. Johnson v. Hugo's Skateway*, 974 F.2d 1408, 1418 (4th Cir. 1992). On appeal (although not in its motion to the district court), the Board argues that the award should have been reduced to reflect work done by Muovich's attorney on her ADA claim that was later dropped. The underlying issues in both failure to accommodate claims, however, are quite similar. We cannot say, therefore, that it was clearly wrong for the district court to allow attorney's fees for work on the ADA

claim, since much of that work was most likely applicable to the ongoing state law claim.

## VI.

Because we find no reversible error, the judgment and the attorney's fee decision of the district court are

*AFFIRMED*.